GOODWIN PROCTER LLP
I. Neel Chatterjee (SBN 173985)
(nchatterjee@goodwinlaw.com)
601 Marshall St.
Redwood City, CA 94063
Telephone: (650) 752-3100
Facsimile: (650) 853-1038

GOODWIN PROCTER LLP
Darryl M. Woo (SBN 100513)
(dwoo@goodwinlaw.com)
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 733-6000
Facsimile: (415) 677-9041

ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE

Attorneys for Plaintiff
JBF Interlude 2009 Ltd. - Israel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JBF INTERLUDE 2009 LTD – ISRAEL,<br><br>Plaintiff,<br><br>v.<br><br>QUIBI HOLDINGS LLC,<br><br>Defendant. | Civil Action No. 2:20-cv-2299<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JBF Interlude Ltd – Israel ("Plaintiff" or "Eko"), parent of U.S. subsidiary Interlude U.S., Inc. d/b/a Eko, brings this Complaint against Defendant Quibi Holdings LLC ("Defendant" or "Quibi") for patent infringement and misappropriation of trade secrets.

## NATURE OF THE ACTION

1.      This is a case to stop the theft of Eko's technology by Quibi, alleging a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. and misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*.

2.      Clifton Smith ("Smith") and Joseph Burfitt ("Burfitt"), two employees of Quibi, are where Quibi's theft began.  Both Burfitt and Smith previously worked for Snapchat, Inc. (which later changed its name to Snap, Inc.; collectively, "Snapchat") and were provided access to Eko's confidential and proprietary technology in the course of their employment at Snapchat.  Before receiving Eko's information, Snapchat executed a non-disclosure agreement with Eko, which required Snapchat and its employees, including Burfitt and Smith, to maintain Eko's disclosed information as confidential, with the understanding that Eko's technology was proprietary and valuable.  As Snapchat employees involved in product and content development, Burfitt and Smith were both copied on email communications disclosing Eko's confidential and trade secret information, and both were required to maintain the confidentiality of that information and not use it for any purpose other than as expressly permitted by Eko.

3.      Upon information and belief, Burfitt and Smith left their employment with Snapchat in October 2018 to join Quibi.  Prior to their doing so, on or around March 23, 2017, Yoni Bloch, CEO and co-founder of Eko, had met in Los Angeles, California, with Jeffrey Katzenberg, co-founder of investment and holding company WnderCo Holdings LLC ("WndrCo").  During this meeting, Mr. Bloch

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

presented Eko's technology to Mr. Katzenberg, including details regarding technology that Quibi now uses in its touted Turnstyle feature. Mr. Katzenberg expressed interest in investing and owning a majority stake in Eko, and Mr. Bloch sent materials to Mr. Katzenberg, including a "sizzle" and APIs/SDKs that embodied the functionality Quibi now calls "Turnstyle," as alleged below.

4.     Later that year, on or about October 18, 2017, Mr. Katzenberg founded WCI One, LLC, which he later renamed Quibi Holdings, LLC. As of February 2019, Quibi informed Eko that it had not yet built any applications related to Eko's technology solution, and Eko informed Quibi that it had pending patent applications on Eko's technology. One of Eko's applications, which had been filed August 26, 2015, resulted in the issuance of U.S. Patent No. 10,460,765 (the "Eko '765 Patent").

5.     After initial discussions, Quibi went silent. Upon information and belief, Burfitt and Smith left their employment with Snapchat in or around October 2018 to join Quibi. Quibi then secretly filed an application that led to the issuance of U.S. Patent No. 10,554,926 ("the Quibi '926 Patent"). The Quibi '926 Patent was directed to the same technology Eko had previously disclosed to Snapchat, and to both Burfitt and Smith, who by now worked for Quibi and were listed as inventors on Quibi's '926 Patent. Despite the stunning similarity between the Quibi '926 Patent and Eko's earlier-filed '765 Patent, Quibi did not refer anywhere to Eko's patented technologies.

6.     Then, without any notice to or consent from Eko, Quibi introduced a new platform claimed to be its own at the January 2020 CES (Consumer Electronics Show), a major annual industry trade show. For the centerpiece of its keynote, Quibi touted a technology it called "Turnstyle"—the exact same technology Eko had earlier presented to Snapchat and Quibi.

7.     On January 28, 2020, within weeks of Quibi's introduction of

- 2 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

Turnstyle at CES, Eko wrote to Quibi demanding that Quibi cease and desist from any unauthorized use of Eko's proprietary technology.  Exhibit A (January 28 Letter from Eko).  However, before Quibi responded, Quibi obtained issuance of its '926 Patent on February 4, 2020.  When Eko examined the claims and disclosures of the Quibi '926 patent, which claimed priority to a provisional application Quibi filed only as early as March 2019, Eko was shocked to discover that they corresponded almost exactly with Eko's '765 patent disclosures, filed years earlier in August 2015.

8.     Quibi dismissively responded on February 10, 2020 to Eko's letter, denying any infringement by Quibi. Exhibit B (February 10 Letter from Quibi).  Quibi claimed that Smith was a non-technical person and disputed Quibi's infringement allegations.

9.     Quibi's statements were false.  Mr. Smith was a listed inventor on Quibi's '926 patent.  And the very noninfringement argument put forward by Quibi was inconsistent with Quibi's own statements to the press and in the '926 patent with respect to how Quibi's TurnStyle technology worked.  In fact, the press statements and Quibi's '926 patent only confirmed that Quibi Turnstyle was infringing.

10.     As a result, Eko replied to Quibi's February 10 letter on March 6, 2020, reiterating its concerns and providing Quibi's counsel with additional facts that Eko had uncovered.  Exhibit C (March 6, 2020 Letter to Quibi).  Eko requested that Quibi respond to Eko's concerns.  Instead of replying, Quibi responded by suing the incorrect entity.

11.     Because Quibi refuses to cooperate with Eko or voluntarily rectify its blatant and egregious violation of Eko's intellectual property rights, Eko now seeks relief from this Court to enjoin Defendant from using Eko's confidential and trade secret information, from infringing Eko's '765 patent, and to require Quibi to

- 3 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

assign Quibi's '926 patent to Eko because any innovation underlying Quibi's '926 patent is Eko's, not Quibi's.  Eko further seeks an award of damages and attorneys' fees for the injury it has incurred as a result of Defendant's trade secret misappropriation and willful infringement of the Eko '765 patent.

## THE PARTIES

12.     Eko is an Israeli corporation with its principal and usual place of business located in Tel Aviv, Israel.  Eko is the parent corporation of Interlude U.S., Inc., a Delaware corporation with its principal and usual place of business located at 235 Park Avenue South, New York, New York.  Eko is a media and technology company that specializes in the distribution of interactive multimedia videos.

13.     Upon information and belief, Quibi is a Delaware corporation with its principal place of business located at 6555 Barton Avenue, Los Angeles, California. Quibi, which was formerly known as WCI One, LLC, is also a media and technology company that focuses on distributing short-form mobile videos.

## JURISDICTION AND VENUE

14.     This is a civil action, for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., and for misappropriation of trade secrets under the DTSA, 18 U.S.C. § 1836, *et seq*.

15.     This Court has original subject matter jurisdiction over Eko's claims for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 35 U.S.C. §§ 271 *et seq*.

16.     This Court has subject matter jurisdiction over Eko's federal trade secret claim pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331, because Plaintiff has asserted a claim for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016.

17.     This Court has personal jurisdiction over Quibi because its headquarters are in Los Angeles, California, and it therefore resides in this District.

- 4 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

18.     Venue is proper in this judicial district for Eko's claims for patent infringement pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Quibi's headquarters are in Los Angeles, California, and it therefore resides in this judicial district pursuant to 28 U.S.C. § 1400(b).

19.     Venue is proper in this judicial district for Eko's federal trade secret misappropriation claim under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the State of California and in this judicial district.

## FACTS

### *Eko's Groundbreaking Innovation*

20.     Eko is an innovative media and technology company that, since 2010, has been developing and obtaining intellectual property protection for its inventions in streaming and interactive media, seamless video streaming, video player technology, user experience and video authoring.  Eko provides, for example, an interactive video platform in which consumers can optimize video viewing on a mobile device, such as a mobile phone.

21.     Eko has invested substantially in research and development of the technologies of its platform, including spending tens of millions of dollars and thousands of man-hours to develop groundbreaking technology related to its seamless horizontal to vertical switching technology for mobile devices.  The sensitive, confidential, and proprietary information and trade secrets developed through this investment enable Eko to succeed in its business.

22.     At all times, Eko has taken reasonable measures to protect the confidentiality of its proprietary trade secret information, including storing its source code on password-protected servers and disclosing it only on a need-to-know or protected NDA basis.  Eko requires, for example, that all employees and third parties with access to Eko's proprietary information execute confidentiality

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

and non-disclosure agreements before being granted access.

23.     Eko also seeks patent protection for particular innovations.  To date, Eko has over 18 pending patent applications and 15 issued patents, including the Eko  '765 patent at issue in this lawsuit.

### The Patent In Suit

24.     Plaintiff Eko is the owner by assignment of all right, title and interest, including the right to sue for damages, in and to United States Patent No. 10,460,765 ("the Eko '765 Patent"), entitled "Systems and Methods for Adaptive and Responsive Video," which was duly and legally issued on October 29, 2019. The '765 patent issued from U.S. Patent Application No. 14/835,857, filed on August 26, 2015.  The '857 application published as U.S. Patent Publication No. 2017/0062012 on March 2, 2017.  A copy of the '765 Patent is attached to the Complaint as Exhibit D.

25.     The Eko '765 Patent is valid and enforceable under United States patent laws.

26.     The claims of the Eko '765 patent are directed to systems and methods that improve the technology involved in playing back video presentations.  It is particularly useful for mobile devices, such as handheld phones and tablets which are easily and often rotated between vertical "portrait" and horizontal "landscape" views.  Rather than crop or letterbox a presentation as did the prior art, Eko's invention advances video display technology by providing seamless transition from a first state of a video presentation to a second state of video presentation.  In particular, the '765 patent describes simultaneously receiving two video presentations, playing the first video based on properties of a playback device, providing a mapping of media player height and width ranges, determining that a playback window has changed dimensions (e.g., from vertical to horizontal), and, using the mapping, seamlessly transitioning from the first video to the second

- 6 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

video.  The properties can include, for example, physical orientation, physical screen size, screen resolution, and/or window size of the device; the second video may include, for example, different video or audio content, different dimensional ratios, and/or different video quality; and the transition from the first video to the second may include changing the position, the shape, and/or the size of a viewing region.

27.    Claim 1 of the '765 Patent, for example, recites as follows:

A computer-implemented method comprising:

identifying one or more properties associated with a user device;

receiving video from a first video presentation;

receiving, simultaneously with the video from the first video presentation, video from a second, different video presentation;

configuring a first state of the video from the first video presentation based on at least one of the properties associated with the user device;

presenting the video from the first video presentation according to the first state;

providing a mapping of video presentations to media player window height ranges and media player window width ranges; and

during playback of the video from the first video presentation:

determining that a media player window in which the video is playing has been resized to change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width;

determining that the second height is included in a particular one of the media player window height ranges;

determining that the second width is included in a particular one of the media player window width ranges;

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

evaluating the mapping to determine that the second video presentation

is mapped to both the particular media player window height range and

the particular media player window width range; and

in response to the evaluating, seamlessly transitioning from the video

from the first video presentation to the video from the second video

presentation based on the change.

### *Eko's Confidential Disclosures To Snapchat Employees*

28. In July 2015, Eko began negotiations with Snapchat regarding integrating Eko technology with Snapchat's platform, where Eko would work with Snapchat to distribute interactive shows. Snapchat personnel involved in these discussions included Marcus Wiley and Smith.

29. In August 2015, Eko filed an application for a patent that eventually issued as the Eko '765 Patent, disclosing and describing responsive videos that change seamlessly based on device orientation, as depicted in Figure 2 of the Eko '765 patent (reproduced below):



30. In order to facilitate further discussions, Eko and Snapchat entered into a Mutual Non-Disclosure Agreement ("Snapchat NDA") on December 9, 2015. The Snapchat NDA specified that either party receiving confidential information

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

from the disclosing party would not disclose, publish, distribute, or otherwise disseminate confidential information to anyone other than its employees and those bound by the confidentiality obligations as restrictive as the Snapchat NDA itself. This approach was consistent with Eko's approach to protection of its technology, which includes storage of code on password protected servers, requiring non-disclosure agreements with third parties, and training of employees not to use or disclose confidential, commercially valuable information.

31.    As alleged above, Eko's CEO and co-founder had met with Mr. Katzenberg on or around March 23, 2017, and disclosed to Mr. Katzenberg Eko's technology, including details regarding the technology that Quibi now uses in its touted Turnstyle feature.

32.    During this same visit to Los Angeles, Mr. Bloch also met with Smith, who was then employed with Snapchat, and shared information with him under NDA regarding Eko's proprietary technology.

33.    On separate occasions in June and July 2017, Snapchat personnel expressed continued interest in Eko, including statements to the effect that "Eko does interactivity best."

34.    During March through May 2018, still pursuant to NDA, Eko and Snapchat moved forward to integrate Eko content onto the Snapchat platform.  In particular, Defendants Burfitt and Smith were copied on email communications between Snapchat and Eko discussing the integration of Eko's proprietary technology to Snapchat's staging application, utilizing technology that Quibi now uses for its Turnstyle feature.

### *Background and Formation of Quibi*

35.    Upon information and belief, Jeffrey Katzenberg on or about October 18, 2017, founded Quibi initially as WCI One, LLC a Delaware limited liability company.  WCI One, LLC filed a Certificate of Amendment to the

- 9 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

Delaware Secretary of State to change its name to Quibi Holdings, LLC on May 16, 2019.

36.     Upon information and belief, on around October 2018, numerous Snapchat employees left Snapchat to join Quibi's team, including Clifton Smith and Joseph Burfitt.

37.     In or around February 2019, Quibi informed Eko that it had not yet started building any applications.  But a mere one month later, Quibi demonstrated a feature to Eko in which video could transition seamlessly from horizontal to vertical orientations.  Eko informed Quibi that Eko had applied for a patent on this exact technology, but Quibi never followed up regarding licensing of Eko's patent, which issued as the Eko '765 patent on October 29, 2019.

38.     Then, in January 2020, Quibi introduced its new platform at the January 2020 CES, featuring technology Quibi called "Turnstyle."  As alleged above, the Quibi '926 Patent was issued on February 4, 2020.  Both Quibi's Turnstyle and Quibi's '926 patent feature the technology claimed by Eko's '765 patent.

### *Defendant's Improper Use of Eko's Proprietary Technology*

39.     Quibi has publicly disclosed that Turnstyle features the exact same technology claimed by Eko's '765 patent.  For example, Quibi asserted during its 2020 CES keynote that it had "invented a new experience and technology that we call Turnstyle" that allows users to "move at will between full screen portrait and full screen landscape" that "required engineering breakthroughs in technology and user experience."[1]

40.     Quibi also publicly stated, numerous times, that Turnstyle is a technology that allows users to seamlessly switch between portrait and landscape viewing modes and experience the same scenes in different perspectives in those

---

[1] *See* CES 2020 keynote, *available at* https://www.youtube.com/watch?v=LXOG9yNRjxk

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

two modes.  For example:

- "Quibi on Wednesday revealed a new mobile video technique called ***Turnstyle that allows mobile video consumers to seamlessly switch between watching the same video on their smartphones either vertically or horizontally***. . . . The technology, which was demoed to reporters on Tuesday at the Consumer Electronics Show (CES) in Las Vegas, is a huge part of what Quibi thinks will help differentiate its product from other mobile video experiences, like Snapchat or Instagram. . . . ***The new format allows Quibi's users to experience the same scenes from slightly different perspectives***. . . . 'Vertical feels quite intimate,' said Catherine Hardwicke, a veteran Hollywood director and executive producer of the new Quibi show 'Don't Look Deeper.' 'You're quite closer [to the camera] and you don't have all the cinema-scope around you. In a landscape format, you feel more the environment — what the character is interacting with. It's interesting — you could watch the whole show twice."[2] (emphasis added)

- "Today at the company's CES keynote, we finally learned about its killer feature: Turnstyle, a patent-pending technology that lets you ***easily switch between portrait and landscape viewing modes***, all the while keeping what matters in frame. . . . As I watched Tom Conrad, Quibi's chief product officer (and the founder of Pandora), ***effortlessly jump between portrait and landscape modes***, I thought to myself, 'Why hasn't anyone done this before?'"[3] (emphasis added)

---

[2] https://www.axios.com/quibi-unveils-turnstyle-its-flagship-mobile-video-format-03a19028-0a7e-4d1a-8173-211cd979ee71.html

[3] https://www.engadget.com/2020/01/08/quibi-mobile-video-turnstyle/

- 11 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

- "Quibi *is* ready to talk about the app's signature technology, Turnstyle, however, which ***lets users switch between portrait and landscape video instantly when they rotate their phones***."[4] (emphasis added)

- "Specifically, Quibi is using a new engineering technology it's calling 'Turnstyle,' which ***allows the viewer to move between portrait mode viewing and landscape viewing, seamlessly*** — and without any black bars to fill the rest of the screen when switching to landscape video. ***This technology, when demoed, worked very well. The shift from portrait to landscape and back again was smooth and fast — an almost imperceptible transition***."[5] (emphasis added)

41.    To show how the Turnstyle functionality applies the invention of the '765 patent, below are screen captures from a recent demonstration of the Turnstyle feature, paired with a tweet which appears to be from Quibi's Twitter account.





42.    These features, however, are also disclosed and claimed by the Eko

---

[4] https://techcrunch.com/2020/02/20/quibis-streaming-service-app-launches-in-app-stores-for-pre-order/2020/02/20/quibis-streaming-service-app-launches-in-app-stores-for-pre-order/
[5] https://techcrunch.com/2020/01/08/quibi-ces/

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

'765 patent.  For example, Claim 1 of the Eko '765 patent describes the following features: (i) "providing a mapping of video presentations to media player window height ranges and media player window width ranges," (ii) "during playback of a video from the first video presentation: determining that a media player window in which the video is playing has been resized to change from first dimensions . . . to second, different dimensions," (iii) "evaluating the mapping to determine that the second video presentation is mapped to both the particular media player window height range and the particular media player window width range," and (iv) "in response to the evaluating, seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change."

43.   Referencing Figures 5A and 5B, for example, the Eko '765 patent's specification describes how these "mapping," "determining," and "evaluating" steps are performed so that users can seamlessly switch between portrait and landscape modes and get different perspectives of the same scene when they rotate their phones.  It describes in relevant part:

> FIGS. 5A and 5B depict a change in device property which results in the viewport 510a to a lecture video 500 changing both size and location. In the first instance, in FIG. 5A, the viewport 510a allows the user to view the full height (300 units) and width (450 units) of the video 500, thereby displaying the full dimensions of the lecture video 500, including the speaker, presentation screen, and audience. The viewport 510a is a rectangular shape (although other shapes are contemplated), and the upper left-hand corner of the viewport 510a is positioned at coordinates (0, 0). Referring now to FIG. 5B, upon detecting a change in a property of the device (e.g., *the device is rotated from landscape to portrait*

- 13 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

*mode*), the viewport 510b is modified in size and repositioned to better accommodate the modified state of the device. Specifically, the viewport 510b is ***modified to a size that better fills the screen of the user device*** (height=300 units, width=200 units) and is positioned with the upper left-hand corner at coordinates (200, 0), to better focus on the speaker. The video and viewport may be zoomed out or in so that the viewport fills the height and/or width of the device display.

'765 patent, 6:60-7:13 (emphasis added).

 

FIG. 5A          FIG. 5B

44.    Quibi not only copied Eko's technology, but applied for a patent on the exact same technology.  A provisional application for Quibi's '926 patent was filed on March 11, 2019, and a nonprovisional application was filed two months later, on May 17, 2019.  The Quibi '926 patent issued on February 4, 2020.

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

45.     A cursory examination of Quibi's '926 patent and Eko's '765 patent reveals a striking resemblance.  For example, there is a clear similarity in the aspect ratio solution between Figure 2 of the Eko '765 patent and Figures 3A and 3B of the Quibi '926 patent.



Eko's '765 patent

Quibi's '926 patent

46.     Moreover, like Eko, Quibi describes the use of "cropping" and "letterboxing" as conventional solutions to fix the problem relating to aspect ratio and the disadvantages of using "cropping" and "letterboxing." The Eko '765 patent describes "seamlessly transitioning from a first to a second video" depending on many different "properties" including "aspect ratio."  Eko '765 patent, 1:35-2:11; 4:46-49.  It explains in relevant part:

> "Digital videos have fixed resolutions, fixed proportions, and fixed content. Dynamic changes to digital video are limited to adaptations in video size and quality to accommodate, for example, different device screen sizes or available communications bandwidth. ***However, such changes have their own disadvantages***. For example, videos scaled to fit a screen size having a different aspect ratio are typically ***cropped***, which results in a loss of content, or are ***letterboxed***, with mattes abutting the video. . . . In general, the present disclosure describes a ***'smart video response' technique***, in which video

- 15 -

content (streaming or otherwise) can adapt in ***real-time***, with targeted, customized, or other responsive content, to ***changes in properties*** associated with a user device, ***all without scaling, letterboxing, or other noted disadvantages of the prior art***.")

Eko '765 patent, 1:25-33 (emphasis added).  The Eko '765 patent expressly mentions "aspect ratio" as one of the properties that triggers a change in how video is displayed on a mobile device.  Eko '765 patent, 4:46-49 ("Other properties of user devices, such as smartphone **200**, can include screen resolution, ***aspect ratio***, display proportions, and physical screen size.") (emphasis added).

47.    The Quibi '926 patent, similarly, explains in relevant part:

"Such mobile devices place new demands on video content. One such demand relates to the ***aspect ratio*** (e.g., the ratio of a display width to a display height) of the video content. Under desired viewing conditions, a native aspect ratio of a video asset ( e.g., a source file containing video content) matches the aspect ratio of the display on which the video asset is presented. For example, when viewing a video asset on a display having a 16:9 aspect ratio, it is desirable that the video asset itself have a 16:9 aspect ratio. If the video asset has an aspect ratio that differs from the aspect ratio of the display, one of two conventional solutions can be used to format the video asset for the display: either the video asset can be ***cropped*** to fit the display (e.g., via "pan and scan" techniques); or the video asset can be ***"letterboxed"*** by adding dummy content (e.g., black bars) to fill the regions of the display unoccupied by the video asset. ***Neither solution is desirable***: ***cropping*** the video asset results in the cropped content being unviewable on the display (which can affect the viewer's understanding or appreciation of the video asset); and ***letterboxing*** the video asset results in regions of the display being effectively unused (which can impair visibility, especially on

- 16 -

COMPLAINT FOR PATENT INFRINGEMENT AND TRADE SECRET MISAPPROPRIATION

mobile devices with limited display space). . . . The present disclosure describes such one or more solutions, ***which improve on conventional approaches*** by providing a data-efficient mechanism for quickly and ***seamlessly changing an aspect ratio of video content*** on a mobile device display."

Quibi '926 patent, 1:30-2:10 (emphasis added).

48.    The claims are also strikingly similar.  The Eko '765 patent's Claim 1 recites "receiving video from a first video presentation [and] . . . video from a second, different video presentation," and "during playback of the video from the first video presentation," "seamlessly transitioning from the video from the first video presentation to the video from the second video presentation based on the change" in a "height" and "width" of a "window in which the video is playing." This "seamlessly transitioning" language (similar to the "seamlessly changing" language in the Quibi '926 patent's specification cited above) also appears in multiple claims  of the Eko '765 patent.

49.    In language similar to that of Eko's '765 Patent, Quibi's '926 Patent's Claim 1 recites "receiving . . . a first video asset . . . with a first aspect ratio; and a second video asset . . . with a second aspect ratio, different from the first aspect ratio," "determining  . . . a desired aspect ratio," and "presenting . . . the selected video asset at the desired aspect ratio," based on "a width" and "a height" of "a frame" of the respective first and second video assets.

50.    The face of the Quibi '926 patent does not disclose any consideration of Eko's patents—even though Quibi was on notice of Eko's patents at least as early as March 2019.

- 17 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

## CAUSES OF ACTION

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS UNDER
## DEFEND TRADE SECRETS ACT

51.     Eko incorporates by reference the allegations contained in paragraphs 1 through 50 of this Complaint, as if fully set forth herein.

52.     Eko owns and possesses confidential and trade secret information, as alleged above.

53.     Eko's confidential and trade secret information relates to products and services used, sold, and ordered in, or intended to be used, sold, and/or ordered in, interstate and foreign commerce.  Specifically, Eko's confidential and trade secret information concerning its formatting and storage of video files to facilitate its smart video response system, is used by customers throughout the United States.

54.     Eko has taken reasonable measures to keep such information secret and confidential by, among other steps, limiting access to such information, storing Eko's source code on password-protected servers, and requiring employees and third parties to abide by confidentiality agreements and observe Eko's policy on protecting Eko's proprietary and confidential information.

55.     Eko's proprietary and confidential information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.  For example, a competitor such as Quibi with access to Eko's trade secrets could avoid having to invest the tens of millions of dollars and thousands of man-hours to research and develop its technology that Eko invested.

56.     In violation of Eko's rights, Defendant has willfully misappropriated Eko's trade secrets.  Burfitt and Smith obtained Eko confidential information while at Snapchat, including source code not disclosed in Eko's '765 patent, and

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

deliberately disclosed that information to their later employer, Quibi to use Eko's trade secret information for Quibi's benefit.

57.     Defendant's misappropriation of Eko's trade secret information has been intentional, knowing, willful, malicious, fraudulent, and oppressive.

58.     If Defendant's conduct is not remedied, Quibi will continue to misappropriate, disclose, and use Eko's trade secret information for their own benefit, and to Eko's detriment.

59.     Because Eko's remedy at law is inadequate, Eko seeks, in addition to damages, permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests.

60.     As the direct and proximate result of Defendant's conduct, Eko has suffered and will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

61.     Eko is also entitled to an award of exemplary damages and attorneys' fees.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,460,765
### *(Against Quibi Only)*

62.     Eko incorporates by reference the allegations contained in paragraphs 1 through 61 of this Complaint, as if fully set forth herein.

63.     Quibi infringes at least Claims 1 and 10 of the Eko '765 Patent.

64.     Quibi's technology, comprising the Turnstyle feature, performs a computer-implemented method comprising: identifying one or more properties associated with a user device; receiving a video for playback on the user device; configuring a first state of the video based on at least one of the properties associated with the user device; presenting the video according to the first state; and during playback of the video: determining that a change in at least one of the properties associated with the user device has occurred; seamlessly transitioning the

- 19 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

video to a second state based on the change, as recited in Claim 1 of the Eko '765 Patent.

65.     Quibi's technology, comprising the Turnstyle feature, includes a system comprising: at least one memory storing computer-executable instructions; at least one processor for executing the instructions storing on the memory, wherein execution of the instructions programs to at least one processor to perform operations comprising: identifying one or more properties associated with a user device; receiving a video for playback on the user device; configuring a first state of the video based on at least one of the properties associated with the user device; presenting the video according to the first state; and during playback of the video: determining that a change in at least one of the properties associated with the user device has occurred; seamlessly transitioning the video to a second state based on the change, as recited in Claim 10 of the Eko '765 Patent.

66.     Quibi's direct infringement as described above has injured and continues to injure Eko, and Eko is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

67.     Quibi has had notice of Eko's application for the Eko '765 Patent since at least March 2019.

68.     Quibi's infringement of the Eko '765 Patent has been and continues to be willful and deliberate as Quibi has acted in an objectively reckless manner in view of the high likelihood that its acts constituted infringement of the Eko '765 Patent and with full knowledge of Eko's rights in the Eko '765 Patent.

69.     For the reasons stated above, Eko is entitled to enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees and costs pursuant to 35 U.S.C. §285.

- 20 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

## **PRAYER FOR RELIEF**

WHEREFORE, Eko respectfully demands judgment in its favor and against Defendant Quibi as follows:

a. Declaring that Quibi has misappropriated Eko's confidential and trade secret information pursuant to the Defend Trade Secrets Act, and that the misappropriation has been willful and malicious.

b. Declaring that Quibi has infringed the Eko '765 Patent, and that the infringement has been willful.

c. Awarding damages as described in each of the above claims, in favor of Plaintiff Eko and against Quibi in amounts to be determined at trial.

d. Enjoining Quibi and its respective officers, agents, servants, employees and attorneys, and all other persons in active concert or participation with them, from using Eko's trade secret information and from selling, offering for sale, marketing or using the Turnstyle feature.

e. Enjoining Quibi and its respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Quibi who receive actual notice of the order by personal service or otherwise, from selling, offering for sale, marketing, or using the Turnstyle feature and any other infringement of the Eko '765 Patent.

## **JURY DEMAND**

Plaintiff Eko respectfully demands a jury trial pursuant to Fed. R. Civ. P. 38 on all issues so triable.

- 21 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION

1    Dated: March 10, 2020

2

3

4    OF COUNSEL:

5    GOODWIN PROCTER LLP
     Cindy Chang (*pro hac vice to be filed*)
6    (cindychang@goodwinlaw.com)
     620 8th Avenue
7    New York, New York 10018
     Telephone: (212) 813 8800
8    Facsimile: (212) 355-3333

/s/ I. Neel Chatterjee

I. Neel Chatterjee

*Attorneys for Plaintiff JBF Interlude Ltd – Israel*

- 22 -

COMPLAINT FOR PATENT INFRINGEMENT AND
TRADE SECRET MISAPPROPRIATION