MICHAEL A. JACOBS (CA SBN 111664)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
mjacobs@mofo.com

BENJAMIN J. FOX (CA SBN 193374)
SOO J. PARK (CA SBN 300988)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
bfox@mofo.com; spark@mofo.com

Attorneys for Defendant
QUIBI HOLDINGS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JBF INTERLUDE 2009 LTD – ISRAEL,<br><br>Plaintiff,<br><br>v.<br><br>QUIBI HOLDINGS LLC,<br><br>Defendant. | No. 2:20-CV-02299-JAK-SK<br><br>(Related to No. 2:20-cv-02250-JAK-SK)<br><br>**OPPOSITION TO *EX PARTE* APPLICATION FOR ACCELERATED HEARING DATE AND BRIEFING SCHEDULE ON MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. John A. Kronstadt |

## INTRODUCTION

Eko's *ex parte* application presents no legitimate argument for altering the briefing or hearing dates on Eko's motion for a preliminary injunction. Nor does it present any "crisis" or "Fire!" to justify *ex parte* relief. *Mission Power Eng. Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Last week, Eko selected May 25, 2020 for its hearing, yet it now inexplicably claims exigent circumstances require a hearing *earlier* than Eko itself requested. (D.I. 32, 33.) No justification exists for Eko's *ex parte* request, which forced Quibi's counsel to "drop all other work" to respond to Eko's wish to be heard before other litigants. *Mission Power*, 883 F. Supp. at 490.

Eko's *ex parte* request should be denied because any alleged timing "crisis" is of Eko's own making. Eko admits that it has been aware of Quibi's alleged use of "Eko's proprietary technology" since March 2019, when Quibi employees demonstrated features of the Quibi mobile app at Eko's office. (D.I. 30-1 ("PI Mot.") at 12.) The long-anticipated launch of Quibi's service is not a surprise; the launch date has been set and widely reported since last spring. Moreover, Quibi refuted Eko's claims of infringement and trade secret misappropriation in writing in February, yet Eko waited another 7-1/2 weeks to seek a preliminary injunction. Eko's unreasonable delay underscores the lack of urgency here and supports denying Eko's motion outright.

Eko will suffer no prejudice from the current hearing date. The *ex parte* papers include no evidence showing a difference between a hearing in May or June. Eko's assertion that Quibi's marketing or launch seeks to take advantage of the COVID-19 pandemic is false, scandalous, and beyond the pale of advocacy.

Quibi will demonstrate in its opposition to the motion for a preliminary injunction that Eko is wrong on the merits. Quibi developed its app independently, without reference to any Eko trade secret. Eko's complaint also suffers fundamental defects, which Quibi will address at the pleading stage. Eko should

not be afforded "special treatment" to move its motion "to the head of the line" in front of other litigants or the regular briefing on the sufficiency of Eko's complaint. *Mission Power*, 883 F. Supp. at 492.

## FACTUAL AND PROCEDURAL BACKGROUND

Quibi independently developed a new digital platform to deliver premium, short-form entertainment content to users' phones. (*See, e.g.*, Declaration of Michael A. Jacobs, Ex. A (Quibi's Compl. for Declaratory Judgment in No. 2:20-cv-02250) ["Quibi Compl."] ¶¶ 1-3.) Quibi's app launched today, April 6, a date that has been widely publicized since spring 2019.[1]

JBF Interlude 2009 Ltd. ("Eko") promotes itself as selling interactive video content via an associated platform for the delivery and viewing of such content.

As Eko's motion for a preliminary injunction asserts, on March 28, 2019, two Quibi employees visited Eko's offices and demonstrated features of Quibi's app — including Quibi's now-accused Turnstyle feature. (PI Mot. at 12.) According to Eko, its CEO "immediately informed [Quibi's employees] during that meeting that the horizontal to vertical switching feature was Eko's proprietary technology, and they would need Eko's permission to use this technology." (*Id.*)

But rather than demanding that Quibi "cease and desist" from allegedly using Eko's technology, on April 1, 2019, Eko's Chief Business Officer, Ivy Sheiber, emailed Quibi: "Loved your demo, and excited to see where you guys are headed." (Quibi Compl. ¶ 20; *see also* Jacobs Decl., Ex. B.)

On January 8, 2020, Quibi demonstrated key features of its app, including its Turnstyle functionality, in a keynote address at the Consumer Electronics Show (CES). Eko attended and, nearly three weeks later, sent Quibi a cease-and-desist

---

[1] *See, e.g.*, < https://variety.com/2019/digital/news/quibi-100-million-ads-jeffrey-katzenberg-meg-whitman-cannes-1203247177/ > (dated June 19, 2019); < https://www.bizjournals.com/losangeles/news/2019/03/08/katzenberg-announces-launch-date-for-quibi-and.html > (dated March 8, 2019).

letter, spuriously claiming it was "stunned" to learn at CES that Quibi was featuring Turnstyle, that Quibi was infringing a recently issued Eko patent, and that Quibi had misappropriated unspecified trade secrets. (D.I. 1 ["Eko Compl."], Ex. A.) Quibi responded in writing on February 10, 2020, explaining why Eko's patent infringement claim was meritless and stating unequivocally that Quibi's app was developed independently and that Quibi had not used or misappropriated any Eko trade secret. (Eko Compl., Ex. B; *see also* Jacobs Decl., Ex. C.)

Eko then took steps outside of any judicial process to tarnish Quibi's name and to interfere with its launch, including submitting a complaint to the Apple App Store and pitching a false story to the *Wall Street Journal* that Quibi was infringing Eko's patent and had misappropriated trade secrets. (Quibi Compl. ¶¶ 24-29.)

Faced with Eko's unfounded threats and harassment, on March 9, 2020, Quibi filed its complaint for a declaratory judgment of patent non-infringement and no trade secret misappropriation. In response, Eko filed its lawsuit on March 10.

Eko then waited another three weeks to file its motion for a preliminary injunction. That motion addresses only its trade secret claim; its patent infringement claim has disappeared. Eko noticed its motion for Memorial Day, May 25, 2020. The Court, on its own motion, set Eko's motion for hearing on June 29, 2020. (D.I. 32.)

On Friday, April 3, 2020, at 4:42 p.m., Eko served its *ex parte* application, requesting an "accelerated" hearing and briefing schedule.

## LEGAL STANDARD

*Ex parte* applications are for extraordinary relief only and should be used sparingly. *aPriori Techs., Inc. v. Broquard*, 2017 U.S. Dist. LEXIS 174245, at *11 (C.D. Cal. Feb. 1, 2017) (citing *Mission Power*, 883 F. Supp. 488). The evidence must show that the movant's cause will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures. *Id.* The movant must also establish that it is "without fault" in creating the crisis that requires

*ex parte* relief, or that the crisis occurred as a result of excusable neglect. *Id.* An *ex parte* application must "show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power*, 883 F. Supp. at 492.

## ARGUMENT

### I. PLAINTIFF'S MANY-MONTH DELAY IN SEEKING A PRELIMINARY INJUNCTION UNDERSCORES THE LACK OF URGENCY OR "CRISIS" JUSTIFYING *EX PARTE* RELIEF

There is no "crisis" justifying an *ex parte* application — and certainly no crisis that is not of Eko's own making. *Mission Power*, 883 F. Supp. at 492.

By Eko's own admission, it believed as early as March 2019 that Quibi was using "Eko's proprietary technology." (PI Mot. at 12.) Eko admits it saw Quibi's technology again at CES on January 8, 2020, and contends the CES keynote presentation alone was sufficient for Eko to determine misappropriation. (PI Mot. at 13 ["Quibi's CES keynote presentation showed that Turnstyle was strikingly similar to Eko's proprietary mobile device optimized RTS technology"].) Yet Eko waited nearly four more months before seeking a preliminary injunction — doing so only after Quibi sought a declaratory judgment.

Eko's year-long delay in asserting its alleged rights would justify denying Eko's preliminary injunction outright. *See, e.g., Garcia v. Google, Inc.*, 786 F. 3d 733, 746 (9th Cir. 2015) (affirming denial of injunction in part because "plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *Javo Bev. Co. v. Cal. Extraction Ventures, Inc.,* 2020 U.S. Dist. LEXIS 31167, at *13 (S.D. Cal. Feb. 24, 2020) (denying motion for preliminary injunction filed six months after learning of alleged misappropriation because plaintiff's "delay alone weighs heavily against a finding of irreparable harm"). At minimum, the delay warrants denying Eko's *ex parte* application. *ADP, LLC v. Hearn*, 2019 U.S. Dist. LEXIS 221039, at *4 (C.D. Cal. Dec. 2, 2019) (two-month delay in seeking temporary restraining order warranted denial of *ex parte*

application).

On this basis alone, Eko's application should be denied.

## II. PLAINTIFF'S *EX PARTE* REQUEST IS NOT SUPPORTED BY ANY LEGITIMATE SHOWING OF PREJUDICE

The application does not show that Eko would suffer "irreparable prejudice" by adhering to the date set by the Court. *Mission Power*, 883 F. Supp. at 492.

The pretext Eko now offers — that Quibi's app launched today, April 6 — does not constitute an exigent circumstance justifying *ex parte* relief. Again, Quibi has widely publicized its April 6 launch since spring 2019, and reaffirmed the launch date at CES.[2] Eko does not and cannot explain how a hearing in May (one month *after* Quibi's launch) would materially differ from a hearing in June.

Eko's choice to notice its motion for Memorial Day, a federal holiday, further demonstrates that as of last Wednesday Eko did not perceive Quibi's launch to present an event that threatened imminent, irreparable prejudice. (D.I. 30.) It makes no sense for Eko now to argue for a hearing weeks *before* Memorial Day. "*Ex parte* applications are not intended to save the day for parties who have failed to present requests when they should have . . . ." *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989).

Eko's preliminary injunction motion itself supports denial of the *ex parte* application. Eko shows no urgent, compelling case of trade secret theft; its claims instead are that it communicated proprietary information in several show-and-tell business discussions that was then misused. Quibi will demonstrate with its substantive opposition that Quibi's app was developed independently over many months by Quibi's talented team of engineers, and not by misappropriation of any Eko trade secret. (*See, e.g.*, Quibi Compl. ¶¶ 13-15 & Exs. C, E.)

---

[2] Eko admits it attended Quibi's keynote address, which is also available in full on YouTube. < https://www.youtube.com/watch?v=LXOG9yNRjxk >.

6

The Defend Trade Secrets Act, 18 U.S.C. § 1836, requires that Eko identify its trade secrets with particularity; a plaintiff's references to a proprietary "Platform Project" under nondisclosure agreements, to "design and development" materials for a project, or to unidentified "source code" are insufficient to state a claim — let alone to support an injunction. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019); *see also Keywords, LLC v. Internet Shopping Enters.*, 2005 U.S. Dist. LEXIS 51464, at *39 (C.D. Cal. June 29, 2005) (denying preliminary injunction where plaintiff failed to detail "the nature of the [trade secret], nor how or where it is reflected in . . . source codes that were allegedly stolen . . . . [nor] detail the subject matter of the [trade secret] with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade").

But Eko's complaint and motion are unclear as to whether the alleged trade secret at issue is computer code, implementation of a specific method for delivering video files, or the broad concept of delivering multiple video files that display different content in landscape or portrait mode. (*Compare, e.g.*, Eko Compl. ¶¶ 53, 56 [referring to "information concerning . . . formatting and storage of video files" and "confidential information . . . including source code"] *with* PI Mot. at 9 [referring to "mobile device optimization RTS technology"].) Eko's submission obscures what specific information it claims it disclosed to Quibi, and uses the terms "proprietary information" and "trade secrets" interchangeably. *TriNet Grp., Inc. v. Krantz*, 2017 U.S. Dist. LEXIS 226086, at *4-7 (C.D. Cal. Aug. 4, 2017) (complaint used "terms 'confidential and proprietary information,' 'Company Information,' and 'trade secrets,' but these terms are neither synonyms nor

coextensive . . . but [plaintiff] does use them interchangeably, thereby rendering the claim unintelligible").[3]

As Quibi will show in its substantive opposition, even if Eko properly identified a trade secret, Quibi's team of engineers and designers that created Quibi's app did not use any Eko trade secret. (*See, e.g.*, Quibi Compl. ¶¶ 50-53.) Eko's motion does not present the type of issue that should be resolved on minimum notice, as Eko now urges. *See, e.g., Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *SPS Techs., LLC v. Briles Aero., Inc.*, 2019 U.S. Dist. LEXIS 77556, at *23-49 (C.D. Cal. Mar. 11, 2019) (providing detailed factual analysis necessary to decide sufficient identification of trade secrets and misappropriation for likelihood of success on merits).

Finally, Eko's invocation of the COVID-19 pandemic as a reason for relief is beyond the pale. Without evidence, Eko accuses Quibi of "exploit[ing] the current situation," despite Eko's knowledge that Quibi's launch has been scheduled for many months. (D.I. 33 at 4.) If anything, the burdens the global pandemic has placed on the Court and other litigants makes Eko's feigned "emergency" even more inappropriate.

---

[3] Eko's motion also fails to show how its "trade secret" is not coextensive with the '765 patent's background and disclosures. (*Compare* PI Mot. at 9 ["[t]he '765 Patent is directed to method and system for viewing a horizontally-filmed video so that it could be viewed in either portrait or landscape orientation, . . . and allowing for seamless transitioning between the two orientations""], *with id.* at 5 ["Eko's trade secrets: One of the technologies developed by Eko is near-instantaneous switching between videos in landscape and portrait modes of a smartphone"], *and id.* at 17 ["mobile device optimized RTS [real-time switching] technology constitutes a trade secret"].) Information disclosed in a patent cannot constitute a trade secret. *Stutz Motor Car of Am. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1360 (C.D. Cal. 1995).

**CONCLUSION**

*Ex parte* applications are solely for emergency relief. *Garmon Corp. v. HealthyPets, Inc.*, 2018 U.S. Dist. LEXIS 88052, at *4 (C.D. Cal. May 24, 2018) (denying *ex parte* request for continuation of hearing date). This is not an emergency, as Eko's own actions have made clear.

Dated: April 6, 2020　　　　　　　MORRISON & FOERSTER LLP

　　　　　　　　　　　　　　　　By: /s/ *Michael A. Jacobs*
　　　　　　　　　　　　　　　　　　　Michael A. Jacobs

　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　QUIBI HOLDINGS LLC

4220787