1  MICHAEL A. JACOBS (CA SBN 111664)
   MORRISON & FOERSTER LLP
2  425 Market Street
   San Francisco, CA  94105-2482
3  Telephone:  (415) 268-7000
   Facsimile:  (415) 268-7522
4  mjacobs@mofo.com

5  BENJAMIN J. FOX (CA SBN 193374)
   SOO J. PARK (CA SBN 300988)
6  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
7  Los Angeles, CA  90017-3543
   Telephone:  (213) 892-5200
8  Facsimile:  (213) 892-5454
   bfox@mofo.com; spark@mofo.com
9
   Attorneys for Defendant
10 QUIBI HOLDINGS, LLC

11                UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13                     WESTERN DIVISION

14

15 JBF INTERLUDE 2009 LTD –        Case No. 2:20-CV-02299-JAK(SKx)
   ISRAEL,
16                                 (Related to *Quibi Holdings LLC v.
                                   Interlude US, Inc. d/b/a Eko*,
17               Plaintiff,        No. 2:20-cv-02250-JAK-SK)

          v.                       **MEMORANDUM OF POINTS
18                                 AND AUTHORITIES IN
   QUIBI HOLDINGS, LLC,           SUPPORT OF QUIBI'S MOTION
19                                 TO DISMISS PLAINTIFF'S
               Defendant.          COMPLAINT WITH
20                                 PREJUDICE**

21

22                                 Judge:    Hon. John A. Kronstadt
                                   Date:     July 27, 2020
23                                 Time:     8:30 a.m.
                                   Crtrm:    10B
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND AND ALLEGATIONS ................................... 2

    A.    Quibi and Eko ........................................................................ 2

    B.    Background re the Parties' Dispute ....................................... 2

    C.    The Complaint's Patent Infringement Allegations ............... 3

    D.    The Complaint's Trade Secrets Allegations .......................... 4

ARGUMENT .................................................................................................. 5

I.    PLAINTIFF HAS FAILED TO PLEAD A PLAUSIBLE CLAIM FOR INFRINGEMENT OF THE '765 PATENT ................. 5

    A.    Eko Has Not Sufficiently Pleaded Patent Infringement ....... 5

    B.    Eko Cannot Cure Its Deficient Allegations of Patent Infringement .......................................................................... 7

II.    PLAINTIFF HAS NOT PLEADED A VIABLE CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS ........................... 9

    A.    Eko Has Not Sufficiently Identified the Trade Secrets at Issue ........ 10

    B.    Eko Has Not Pleaded Facts Sufficient to Show That Quibi Misappropriated Any Trade Secrets .................................... 14

    C.    The Allegations in Eko's Motion for a Preliminary Injunction Do Not Cure the Defects in Eko's Complaint or Provide Fair Notice ....................................................... 16

CONCLUSION............................................................................................. 16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 663 (2009) .................................................................... 14

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  343 F. Supp. 3d 868 (N.D. Cal. 2018)..................................... 13

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019)...............................9, 10, 12, 15

*AXS Grp. LLC v. LISNR, Inc.*,
  No. 17-8413-GW(SKx), 2018 U.S. Dist. LEXIS 222718,
  (C.D. Cal. May 25, 2018) ............................................................. 7

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  No. 18-cv-00933-MMC, 2018 WL 2298500,
  2018 U.S. Dist. LEXIS 85121 (N.D. Cal. May 21, 2018) ................................ 11

*Bonilla v. Oakland Scavenger Co.*,
  697 F.2d 1297 (9th Cir. 1982)..................................................... 16

*Cook, Perkiss & Liehe v. N. Cal. Collection Service*,
  911 F.2d 242 (9th Cir. 1990)........................................................ 8

*e.Digital Corp. v. iBaby Labs, Inc.*,
  No. 15-cv-05790-JST, 2016 U.S. Dist. LEXIS 111689,
  2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)..................................... 7

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
  No. 19-cv-05611-PJH, 2020 U.S. Dist. LEXIS 16368,
  2020 WL 513287 (N.D. Cal. Jan. 31, 2020) ..................................... 13

*GlobeSpan, Inc. v. O'Neill*,
  151 F. Supp. 2d 1229 (C.D. Cal. 2001)................................. 14

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
  No. 18cv1656-WQH-LL, 2018 U.S. Dist. LEXIS 213912,
  2018 WL 6617633 (S.D. Cal. Dec. 18, 2018)........................ 13, 15

ii

*Imax Corp. v. Cinema Techs., Inc.*,
  152 F.3d 1161 (9th Cir. 1998) ........................................................................ 10

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
  No. SA CV 17-1748-DOC (JDEx), 2018 U.S. Dist. LEXIS 229100,
  2018 WL 4963129 (C.D. Cal. June 22, 2018) .................................................. 5, 6

*InteliClear, LLC v. ETC Global Holdings*,
  2019 U.S. Dist. LEXIS 130810 (C.D. Cal. Apr. 5, 2019) ................................. 13

*Invisible DOT, Inc. v. Dedecker*,
  No. 2:18-cv-08168-RGK-RAO,
  2019 U.S. Dist. LEXIS 68161 (C.D. Cal. Feb. 6, 2019) ................................... 10

*M v. Litrinium, Inc.*,
  No. 19-220 JVS (JDEx), 2019 U.S. Dist. LEXIS 212479,
  2019 WL 6655274 (C.D. Cal. Sep. 23, 2019 ..................................................... 15

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ...................................................... 10, 15

*MGA Entm't, Inc. v. Louis Vuitton Malletier, Société Anonyme*,
  No. 2:18-cv-10758-JFW(RAOx), 2019 U.S. Dist. LEXIS 81397,
  2019 WL 2109643 (C.D. Cal. May 14, 2019) ..................................................... 8

*N. Star Innovations, Inc. v. Kingston Tech. Co.*,
  No. CV 17-01833-DOC (DFMx),
  2018 U.S. Dist. LEXIS 106018 (C.D. Cal. May 7, 2018) ................................... 5

*Novitaz, Inc. v. inMarket Media, LLC*,
  No. 16-cv-06795-EJD, 2017 U.S. Dist. LEXIS 81491,
  2017 WL 2311407 (N.D. Cal. May 26, 2017) ..................................................... 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ......................................................................... 6

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
  360 F. Supp. 3d 994 (N.D. Cal. 2018) .............................................................. 15

*Revolutionary Software, Inc. v. Eclipsys Corp.*,
  No. C 05-3127 JW (PVT), 2007 U.S. Dist. LEXIS 43760,
  2007 WL 1655564 (N.D. Cal. June 7, 2007) ..................................................... 10

iii

4210741

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ............................................................................. 7

*Safe Air For Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ......................................................................... 16

*SMS Signature Cars v. Connects Mktg. LLC*,
No. 12-1300 JVS (ANx), 2012 WL 12893935
(C.D. Cal. Oct. 29, 2012) ................................................................................. 11

*Space Data Corp. v. X*,
2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .................................................. 13

*Taoglas Grp. Holdings Ltd. v. 2J Antennas USA, Corp.*,
No. 18CV1277-LAB, 2019 U.S. Dist. LEXIS 44093
(S.D. Cal. Mar. 18, 2019) ................................................................................. 14

*TeleSign Corp. v. Twilio, Inc.*,
No. 16-2106 PSG (SSx), 2016 U.S. Dist. LEXIS 123516
(C.D. Cal. Aug. 3, 2016) .............................................................................. 5, 7

*TriNet Grp., Inc. v. Krantz*,
No. CV 16-06447-AB (GJSx),
2017 U.S. Dist. LEXIS 226086 (C.D. Cal. Aug. 4, 2017) ................................ 11

*Vendavo, Inc. v. Price f(x) AG*,
No. 17-cv-06930-RS, 2018 WL 1456697,
2018 U.S. Dist. LEXIS 48637 (N.D. Cal. Mar. 23, 2018) ................................ 13

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443 (2002) ......................................................................... 14

*Zoom Imaging Sols., Inc. v. Roe*,
No. 2:19-cv-01544-WBS-KJN, 2019 U.S. Dist. LEXIS 195374,
2019 WL 5862594 (E.D. Cal. Nov. 8, 2019) .................................................... 12

**Statutes and Rules**

18 U.S.C.
§ 1839(3) ............................................................................................................ 9
§ 1839(5) ............................................................................................................ 9

4210741

Fed. R. Civ. P.

    Rule 8 ........................................................................................ 13, 16
    Rule 12(b)(1) ................................................................................... 16
    Rule 12(b)(6) ................................................................................... 16

4210741

**INTRODUCTION**

Eko's complaint fails to properly plead a claim for patent infringement or trade secret misappropriation.  The pleading defects are not oversights; Quibi raised them by letter weeks before Eko filed its complaint—including in a letter that Eko attaches to its complaint.  The defects are fundamental and incurable.  A pre-filing investigation could lead to only one reasonable conclusion:  Quibi's app does not meet key limitations of U.S. Patent No. 10,460,765, including limitations that Eko added during patent prosecution to obtain its patent, and the app was created without reference to any Eko trade secret.

The asserted claims of Eko's patent require, among other limitations, a mapping of video presentations "to media player window height ranges and media player window width ranges," and transitioning between video presentations based on the resized window being within certain height and width ranges.  The complaint fails to allege facts showing that it is plausible that Quibi's app practices the limitations of the '765 patent related to media player window resizing.  Rather, as the complaint recognizes in citing portions of Quibi's presentation from the Consumer Electronics Show, Quibi's app is customized for use with mobile phones, and thus it does not consider media player window height and width ranges in transitioning between content.  Quibi delivers full-screen content in both horizontal (or "landscape") and vertical ("portrait") orientations (*see* Compl. ¶ 41)—a concept that Eko gave up during prosecution of its patent.  These fundamental differences between Quibi's app and the claims of Eko's patent make any amendment of the patent infringement claim futile.

Eko's claim for misappropriation under the DTSA also suffers serious deficiencies.  The complaint fails to identify the claimed trade secrets with the particularity required by the DTSA, and it does not give Quibi fair notice of the claim.  Eko also fails to allege facts sufficient to plausibly show that Eko's purported disclosures to employees at a prior company (Snap) included the trade

1  secrets at issue here, that any such disclosures should be imputed to Quibi, or that

2  Quibi used or misappropriated any Eko trade secret.

3      For the reasons discussed more fully herein, Eko has not pleaded a claim for

4  relief.  Several of the defects are incurable, warranting dismissal with prejudice.

5  **FACTUAL BACKGROUND AND ALLEGATIONS**

6  **A.**    **Quibi and Eko**

7      Quibi Holdings, LLC was founded in 2018 by Jeffrey Katzenberg to deliver

8  short-form premium entertainment content to users' mobile phones.  Quibi's

9  accused Turnstyle technology permits the user to seamlessly transition from

10  landscape to portrait mode by changing the orientation of her phone.  (Compl.

11  ¶ 40.)  Quibi obtained a patent on its Turnstyle implementation on February 4,

12  2020.  (*Id.* ¶ 38; U.S. Patent No. 10,554,926 [ECF No. 30-29].)  Quibi announced

13  the planned launch of its service in spring 2019, and launched on April 6, 2020.

14      Eko promotes "branching" interactive video content, where users select the

15  plot and endings of videos, and a media player for the delivery such content.

16  (Compl. ¶¶ 12, 20.)  Eko was founded in 2010 by Yoni Bloch.  (*Id.* ¶¶ 3, 20.)

17  **B.**    **Background re the Parties' Dispute**

18      In March 2017, Eko's CEO met with Jeffrey Katzenberg, and "disclosed to

19  Mr. Katzenberg Eko's technology, including details regarding the technology that

20  Quibi now uses in its touted Turnstyle feature."  (Compl. ¶ 31.)  Eko does not

21  allege the meeting was conducted under a nondisclosure agreement or other

22  expectation of confidentiality.  (*See, e.g.*, *id.* ¶¶ 3, 31.)

23      Separately, Eko alleges that it met with and shared "proprietary technology,"

24  trade secrets, and "source code" with employees of Snap, including two employees

25  (C.J. Smith and Joe Burfitt) who later joined Quibi.  (*Id.* ¶¶ 2-5, 30, 32, 34, 53, 56.)

26      Quibi presented its service, including its Turnstyle feature, to the public

27  during the keynote address at the Consumer Electronics Show on January 8, 2020.

28  (*Id.* ¶¶ 6, 38.)  On January 28, Eko wrote to Quibi asserting that Turnstyle infringes

the '765 patent and was made using misappropriated trade secrets.  (Compl. ¶ 7, Ex. A.)  Quibi refuted those allegations by letter on February 10.  (*Id.* ¶ 8, Ex. B.)  Weeks later, Eko responded with another letter.  (*Id.* ¶ 10, Ex. C.)  Faced with these accusations and Eko's false statements to the press and complaint to the Apple App Store, on March 9, 2020, Quibi sought a declaratory judgment of noninfringement and no misappropriation.  (*Quibi Holdings, LLC v. Interlude US, Inc. d/b/a Eko*, No. 2:20-cv-02250 (C.D. Cal.), ECF. No. 1.)

The next day, Eko filed its complaint alleging infringement of the '765 patent and trade secret misappropriation.  Eko's complaint alleges that Eko revealed its technology in communications with Snap under a non-disclosure agreement, in meetings with Snap employees, and in a 2017 meeting between Eko's CEO and Quibi's founder, Mr. Katzenberg (again, without any allegation that the Katzenberg meeting was conducted under an NDA).  (Compl. ¶¶ 28-34.)  Eko claims that the use of its technology—both patented and trade secret—can be shown by Quibi's public statements and from Quibi's own patent.  (*Id.* ¶¶ 39-41, 44-50.)

## C.     The Complaint's Patent Infringement Allegations

Count Two of Eko's complaint alleges that Quibi's app directly infringes Eko's '765 patent.  (Compl. ¶¶ 62-66.)

Claim 1 of the '765 patent is a method claim that recites in part:

A computer-implemented method comprising:

. . . providing a mapping of video presentations to media player window height ranges and media player window width ranges; and

during playback of the video from the first video presentation:

determining that a media player window in which the video is playing has been resized to change from first dimensions comprising a first height and a first width to second, different dimensions comprising a second height and a second width;

determining that the second height is included in a particular one of the

3

1    media player window height ranges;

2    determining that the second width is included in a particular one of the media
3    player window width ranges;

4    evaluating the mapping to determine that the second video presentation is
5    mapped to both the particular media player window height range and the
6    particular media player window width range; and

7    in response to the evaluating, seamlessly transitioning from the video from
     the first video presentation to the video from the second video presentation
8    based on the change.

9    (Compl. ¶ 27; *see also id.* Ex. D ("'765 patent") at 12:49–13:18.)  Claim 10 of the

10   '765 patent is a system claim that recites these same limitations.  ('765 patent at

11   13:58–14:32.)

12         Despite these limitations directed to resizable media player windows, Eko

13   alleges that Quibi's Turnstyle feature is claimed by Eko's '765 patent.  (Compl.

14   ¶ 42.)  Eko supports its infringement allegations primarily by citing the patent's

15   specification.  (*Id.* ¶¶ 43, 45, 46.)  In the limited instances in which Eko addresses

16   the '765 patent *claims*, it does so solely by grouping the claim limitations together

17   and reciting them as a group, without comparing each element to corresponding

18   functions in Quibi's technology.  (*See, e.g.*, *id.* ¶¶ 27, 42, 48, 64, 65.)

19         Eko further alleges that Quibi's '926 patent shows that Quibi is infringing

20   Eko's patent (*id.* ¶¶ 44-50), and that Quibi's infringement is willful (*id.* ¶¶ 67-69).

21   **D.**    **The Complaint's Trade Secrets Allegations**

22         In Count One, Eko alleges misappropriation of trade secrets under the

23   Defend Trade Secrets Act.  (Compl. ¶¶ 51-61.)  Eko asserts that its "confidential

24   and trade secret information concerning its formatting and storage of video files to

25   facilitate its smart video response system, [which] is used by customers throughout

26   the United States."  (*Id.* ¶ 53.)  Eko further alleges that it disclosed "confidential

27   information . . . including source code" to two Snap employees, who later joined

28   Quibi.  (*Id.* ¶ 56.)  Eko alleges that the Snap employees were given access to Eko's

4

"proprietary technology" under a non-disclosure agreement with Snap (*id.* ¶¶ 2, 30),
and that these employees later disclosed Eko's information to Quibi (*id.* ¶¶ 56-57).

ARGUMENT

## I.   PLAINTIFF HAS FAILED TO PLEAD A PLAUSIBLE CLAIM FOR INFRINGEMENT OF THE '765 PATENT

### A.   Eko Has Not Sufficiently Pleaded Patent Infringement

To state a claim for patent infringement, a plaintiff must plausibly allege that
the defendant's accused product practices each limitation of at least one patent
claim.  *TeleSign Corp. v. Twilio, Inc.*, 2016 U.S. Dist. LEXIS 123516, at *7-8 (C.D.
Cal. Aug. 3, 2016) (granting motion to dismiss).  A "[p]laintiff's failure to plead
sufficient factual support to plausibly allege that the Accused Devices practice *each
limitation* of the asserted claims means that Plaintiff fails to state a claim for direct
infringement."  *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*, 2018 U.S. Dist.
LEXIS 229100, *17 (C.D. Cal. June 22, 2018) (emphasis added) (granting motion
to dismiss claim for direct patent infringement).

Eko asserts infringement of claims 1 and 10 of the '765 patent (Compl. ¶ 63),
but fails to allege how Quibi's technology practices each limitation of either claim.
In its section titled "Count II – Infringement of U.S. Patent No. 10,460,765," Eko
provides only a paraphrased recitation of the asserted claim limitations, without any
accompanying factual allegations regarding Quibi's technology.  (*Id.* ¶¶ 64, 65.)
"[M]erely recit[ing] the claim language for each limitation . . . without factual
support" is not sufficient to survive a motion to dismiss.  *Int'l Techs.*, 2018 U.S.
Dist. LEXIS 229100, at *16; *see also N. Star Innovations, Inc. v. Kingston Tech.
Co.*, 2018 U.S. Dist. LEXIS 106018, at *7-11 (C.D. Cal. May 7, 2018) (granting
motion to dismiss where plaintiff recited claim limitations and stated accused
products practiced them).

Eko omits multiple limitations from its paraphrased recitations of claims 1
and 10, including "receiving video from a first video presentation," "receiving, . . .

5

1  video from a second, different video presentation," "providing a mapping of video

2  presentations to media player window height ranges and media player window

3  width ranges," and several other limitations related to evaluating the mapping to

4  determine whether the "height" and "width" of the resized "media player window"

5  are included within particular height and width ranges.  (*Compare* Compl. ¶ 27 *with*

6  *id.* ¶¶ 64, 65.)

7       Even where Eko attempts to allege facts regarding Quibi's technology in the

8  "Facts" section, Eko does not allege the necessary facts mapping Quibi's

9  technology to each limitation of claim 1 or 10 of the '765 patent.  (*See* Compl.

10  ¶¶ 20-50, 62-69.)  Eko lists claim 1's limitations but fails to reckon with each of

11  them.  (*Compare id.* ¶ 27 *with id.* ¶¶ 40-50.)  Instead, Eko focuses on its patent

12  specification—despite the "bedrock principle of patent law that the claims of a

13  patent define the invention to which the patentee is entitled the right to exclude."

14  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted).

15  Eko's extensive quotes from the specification—rather than the claims—reflect its

16  inability to allege infringement of the claims themselves.  (*See* Compl. ¶¶ 43, 46.)

17       Instead of comparing Quibi's technology with *each* limitation, Eko in two

18  instances compares Quibi's technology with *a selected group* of limitations.  (*Id.*

19  ¶¶ 40-42, 48-49).  But these groupings not only fail to satisfy the pleading standard,

20  they do not correspond with Eko's own description of Quibi's accused product.

21  For example, Eko cites Quibi's public statements touting Quibi's ability to switch

22  device orientation between portrait and landscape mode, but then lists a group of

23  limitations instead directed toward the "dimensions" of resizable media player

24  windows.  (*Id.* ¶¶ 39-42.)  Eko thus fails to link Quibi's statements to the specific

25  limitations.  *Int'l Techs.*, 2018 U.S. Dist. LEXIS 229100, at *14-16 (dismissing

26  claim where complaint "d[id] not link statements made in [defendant's] documents

27  to the specific limitations of any asserted claim").

28       This failure to find a suitable Quibi "match" for Eko's resizable media player

6

window limitations is no mere oversight.  During patent prosecution, Eko chose to
add these limitations after its original claims—encompassing device orientation—
were rejected.  (*See infra*, Section I(C).)  These limitations reveal the defects in
Eko's patent infringement claim.  Eko cannot allege *any* facts about the Quibi app
determining whether a "media player window" has been resized, and evaluating a
mapping to determine whether the new window dimensions are included within
particular height and width ranges.  *Novitaz, Inc. v. inMarket Media, LLC*, 2017
U.S. Dist. LEXIS 81491, at *11-13 (N.D. Cal. May 26, 2017) (dismissing
complaint that made no factual allegations about a website despite claim limitation
requiring "detecting an interaction of the customer with a website").  Eko even
omits those limitations from its paraphrased recitation of the claims in its claim for
relief.  (*Compare* Compl. ¶ 27 *with id.* ¶ 64.)

   In sum, Eko fails to allege facts showing that Quibi's technology practices
each limitation of either patent, instead simply ignoring or grouping together
limitations that Quibi does not practice, and the claim must be dismissed.  *AXS Grp.
LLC v. LISNR, Inc.*, 2018 U.S. Dist. LEXIS 222718, at *5 (C.D. Cal. May 25,
2018) (granting motion to dismiss because plaintiff presented no facts that accused
product practiced particular limitations); *e.Digital Corp. v. iBaby Labs, Inc.*, 2016
U.S. Dist. LEXIS 111689, at *8, 13 (N.D. Cal. Aug. 22, 2016) (granting motion to
dismiss where plaintiff failed "to plausibly allege that the accused product practices
each of the limitations found in at least one asserted claim").[1]

   **B.     Eko Cannot Cure Its Deficient Allegations of Patent Infringement**

   A court need not grant leave to amend in cases where "the pleadings before
the court demonstrate that further amendment would be futile."  *Rutman Wine Co.*

---

   [1] Eko's allegations of willful infringement fail for the same reasons.  "The
Court's determination that Plaintiff fails to show direct infringement dooms
Plaintiff's . . . willful infringement claims as well."  *TeleSign Corp.*, 2016 U.S.
Dist. LEXIS 123516, at *11 (granting motion to dismiss direct and willful
infringement claims).

4210741

1   *v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *MGA Entm't, Inc. v.*

2   *Louis Vuitton Malletier, S.A.*, 2019 U.S. Dist. LEXIS 81397, at *12 (C.D. Cal. May

3   14, 2019) (granting motion to dismiss without leave to amend).  The defects in

4   Eko's complaint cannot be cured.  *See Cook, Perkiss & Liehe v. N. Cal. Collection*

5   *Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Eko cannot allege that Quibi meets

6   the "media player window" limitations of the asserted claims.

7           As noted above, the '765 patent's path through the Patent Office confirms

8   that Eko's claims are inapplicable to Quibi's Turnstyle functionality.  During

9   prosecution, Eko initially sought broad claims directed to transitioning between

10  video presentations in response to changes in device orientation.  (Compl. ¶ 29.)

11  The Patent Office repeatedly rejected these broad claims.  Eko then changed course

12  and focused on transitioning between videos in response to resizable media player

13  windows.  (*Compare* Request for Judicial Notice ["RJN"] Ex. A at 5, 19, 39 [patent

14  application claim 1] *with* RJN Ex. A at 58-59 [issued patent claim 1].)  The claims

15  include steps such as "mapping . . . video presentations to media player window

16  height ranges and . . . width ranges," "determining that a media player window . . .

17  has been resized to change . . . dimensions," and "evaluating the mapping" of the

18  video presentations to media player window dimensions.  (Compl. ¶ 27.)  This

19  applies to a different embodiment than simply rotating the device (like in FIG. 2 of

20  the '765 patent)—a distinction Eko's patent explicitly acknowledges:  "[R]ather

21  than physically rotating or repositioning the user device, the user changes the

22  window size or state (e.g., minimized, maximized, thumbnailed) of the media

23  player **300** using an input device (e.g., mouse, keyboard, touchscreen, etc.)."  ('765

24  patent at 5:50-54.)  Eko thus convinced the Patent Office that its claims were

25  patentable by adding limitations directed to transitioning between video

26  presentations in response to changes in the dimensions of a media player window—

27  not in response to changes in device orientation.

28          Eko does not and cannot allege that Quibi's app presents video in resizable

8

1    media player windows, such as those found on desktop and laptop computers.

2    (*See* Compl. ¶¶ 39-41.)  Quibi's app presents portrait and landscape videos on

3    mobile devices in full-screen views, *not in windows that are resized*.  (*Id.*)  To

4    change between portrait and landscape videos, the user has to rotate the mobile

5    device.  Accordingly, Quibi's app does not determine whether "a media player

6    window . . . has been resized to change from first dimensions . . . to second,

7    *different* dimensions," as required by the claims of the '765 patent.  (*Id.* ¶ 27

8    [emphasis added].)  Quibi's functionality is widely publicized and its app is

9    available for download.  Despite ample opportunity, Eko cannot point to anything

10   that meets these claim elements.

11        This fundamental difference between Eko's '765 patent and Quibi's

12   Turnstyle functionality forced Eko to overlook and obscure these limitations in its

13   complaint.  Eko cannot allege additional facts that will change this reality, which

14   makes amendment futile.

15   **II.    PLAINTIFF HAS NOT PLEADED A VIABLE CLAIM FOR**
         **MISAPPROPRIATION OF TRADE SECRETS**
16

17        To state a claim under the DTSA, Eko must allege (1) ownership of a trade

18   secret, (2) misappropriated by defendant, (3) damaging plaintiff.  *AlterG, Inc. v.*

19   *Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019).  The DTSA

20   defines a "trade secret" as "financial, business, scientific, technical, economic, or

21   engineering information" that "(A) the owner thereof has taken reasonable

22   measures to keep . . . secret; and (B) . . . derives independent economic value,

23   actual or potential, from not being generally known to, and not being readily

24   ascertainable through proper means by, another person who can obtain economic

25   value from the disclosure or use of the information."  18 U.S.C. § 1839(3).

26   "Misappropriation" is (1) "[a]cquisition of a trade secret by a person who knows or

27   has reason to know that the trade secret was acquired by improper means;" or

28   (2) the "[d]isclosure or use of a trade secret of another without express or implied

                                            9

1  consent . . . ." 18 U.S.C. § 1839(5).

2      **A.    Eko Has Not Sufficiently Identified the Trade Secrets at Issue**

3      To plead existence of a trade secret, the complaint "should describe the trade

4  secret with sufficient particularity to separate it from matters of general knowledge

5  in the trade or special knowledge of those persons who are skilled in the trade, and

6  to permit the defendant to ascertain at least the boundaries within which the secret

7  lies." *AlterG*, 388 F. Supp. 3d at 1144 (quotation omitted); *see also Imax Corp. v.*

8  *Cinema Techs., Inc.*, 152 F.3d 1161, 1163-64 (9th Cir. 1998) (describing

9  substantially same particularity required by state law).  The pleading "must contain

10  'enough specificity to provide both the Court and defendants with 'notice of the

11  boundaries of this case.''"  *Invisible DOT, Inc. v. Dedecker*, 2019 U.S. Dist. LEXIS

12  68161, at *12 (C.D. Cal. Feb. 6, 2019) (quoting and citing additional authority);

13  *see also MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D.

14  Cal. 2012) (the trade secret must be identified "with sufficient particularity to give

15  defendants 'reasonable notice of the issues which must be met at the time of trial

16  and to provide reasonable guidance in ascertaining the scope of appropriate

17  discovery.'").

18      Here, the complaint does not provide fair notice to Quibi of the trade secrets

19  that Eko claims were misappropriated.  The purported identification of trade secrets

20  appears primarily in Paragraph 53 of the complaint, which states:

21
22          Eko's confidential and trade secret information relates to products and services used, sold, and ordered in, or intended to be used, sold, *and/or* ordered in, interstate and foreign
23          commerce.  Specifically, Eko's confidential and trade secret information concerning its *formatting and storage of video*
24          *files* to facilitate its smart video response system, is *used by customers throughout the United States*.
25

26  (Compl. ¶ 53 [emphasis added].)

27      The pleading does not explain how the unspecified "information

28  concerning . . . formatting and storage of video files" could be a trade secret

10

4210741

especially where, as the complaint admits, consumers "throughout the United
States" use it.  *See, e.g.*, *Revolutionary Software, Inc. v. Eclipsys Corp.*, 2007 U.S.
Dist. LEXIS 43760, at \*6 (N.D. Cal. June 6, 2007) (information shared between
company and customers "is by definition likely *not* a trade secret"); *SMS Signature
Cars v. Connects Mktg. LLC*, 2012 WL 12893935, at \*4 (C.D. Cal. Oct. 29, 2012)
(descriptions of "supply chain source" and "chain of distribution" trade secrets did
not "provide any basis for a determination that the alleged secrets are not 'matter[s]
of general knowledge in the trade'").

     The complaint also alleges that two Quibi employees "obtained Eko
confidential information while at Snapchat, including source code not disclosed in
Eko's '765 patent," and later "disclosed that information" to Quibi.  (Compl. ¶ 56;
*compare Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500 at
\*3 (N.D. Cal. May 21, 2018) (allegations that defendants improperly downloaded
data including "source code files," "design review templates," and "fluidics design
files," lacked particularity and failed to plead a trade secret under the DTSA,
especially where "preceded by the phrases 'such files included' and 'such as.'")
No further information about the source code at issue is provided — including, *e.g.*,
what the source code covered or did; the file format(s) in which the source code
was maintained or provided; how it was conveyed to Snap (or to Quibi); and
whether the "confidential" source code constituted a trade secret.[2]

     The complaint does not distinguish between "confidential information" and
legitimate trade secrets, and thus fails to state a claim under the DTSA or its
analogous state statute, the CUTSA.  (Compl. ¶¶ 53, 56; *see, e.g.*, *TriNet Grp., Inc.*

---

[2] As Quibi's complaint for a declaratory judgment explains, Eko's allegations
that the two former Snap employees obtained source code from Eko and years later
provided it to Quibi are implausible on their face, because the employees are not
programmers or engineers, and cannot read computer code.  (*See* Compl. in *Quibi
Holdings, LLC v. Interlude US, Inc. d/b/a Eko*, No. 2:20-cv-02250 (C.D. Cal. filed
Mar. 9, 2020).)  Eko's complaint does not address these deficiencies, despite
knowing about them before filing suit.

4210741

1  *v. Krantz*, 2017 U.S. Dist. LEXIS 226086, at *4-8 (C.D. Cal. Aug. 4, 2017)

2  (complaint used "terms 'confidential and proprietary information,' 'Company

3  Information,' and 'trade secrets,' but these terms are neither synonyms nor

4  coextensive . . . but [plaintiff] does use them interchangeably, thereby rendering the

5  claim unintelligible"); *Zoom Imaging Sols., Inc. v. Roe*, 2019 U.S. Dist. LEXIS

6  195374, at *13-16 (E.D. Cal. Nov. 8, 2019) (granting motion to dismiss CUTSA

7  claim where plaintiff's non-exhaustive list of "Confidential Information" was

8  business information "including but not limited to trade secrets").)

9       The complaint also does not explain how Eko's trade secret allegations

10  concerning "its smart video response system" could survive Eko's public disclosure

11  of the same broad concepts in the specification of Eko's '765 patent, or the

12  narrower invention claimed in the '765 patent.  (*See, e.g.*, Compl. ¶¶ 42-44, 63-68.)

13  Eko alleges that Quibi simultaneously infringed its patent and misappropriated its

14  trade secret, making it all the more incumbent on Eko to delineate how any possible

15  trade secrets survive its patent's disclosure.  *See, e.g.*, *AK Steel Corp. v. Sollac*,

16  344 F.3d 1234, 1244 (Fed. Cir. 2003) ("[A]s part of the *quid pro quo* of the patent

17  bargain, the applicant's specification must enable one of ordinary skill in the art to

18  practice the full scope of the claimed invention.").

19       Eko's threadbare allegations of trade secrets do not pass muster when

20  compared to the level of specificity required in this Circuit.  For example, *AlterG*

21  considered trade secrets described as (1) "learnings from AlterG's Low-Cost

22  Platform Project" subject to non-disclosure agreements ("NDAs"), (2) plaintiff's

23  "development of anti-gravity rehabilitation products," and (3) plaintiff's "design

24  and development of its anti-gravity rehabilitation and training units, including, but

25  not limited to its marketing and product strategy, cost strategies, . . .  and

26  technology innovation."  388 F. Supp. 3d at 1145.  The court ruled that these

27  "broad categories of information" did not give fair notice of the claim.  *Id.*

28       Eko's complaint is worse than in *AlterG*:  It refers only to "its formatting and

storage of files to facilitate its smart video system" (Compl. ¶ 53) without explaining how Eko's "formatting and storage of files" differs from information that is disclosed in Eko's '765 patent or otherwise publicly available.  (*Id.* ¶¶ 42-45.)  Eko's reference to unidentified "source code" is similarly unhelpful.

Additional authority supports the conclusion that Eko's references to "formatting and storage of video files," and "confidential information including source code"—which are nothing more than broad categories of information—do not adequately identify a trade secret.  *See, e.g.*, *Human Longevity, Inc. v. J. Craig Venter Inst.*, Inc., 2018 U.S. Dist. LEXIS 213912, at *11, 14 (S.D. Cal. Dec. 18, 2018) (list of trade secrets "including without limitation" various categories did not provide required specificity); *Vendavo, Inc. v. Price f(x)*, 2018 WL 1456697, at *3, 4 (N.D. Cal. Mar. 23, 2018) (allegations that plaintiff misappropriated "source code, customer lists and customer related information, . . .  and other information related to the development of [plaintiff's] price-optimization software" was indicative of "the types of information that generally *may* qualify as protectable trade secrets," but did not plead the trade secret at issue); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("a high-level overview of Space Data's purported trade secrets, such as 'data on the environment in the stratosphere' and 'data on the propagation of radio signals from stratospheric balloon-based transceivers' . . . do not satisfy the Rule 8 pleading requirements").[3]

_____

[3] *Compare, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (trade secrets were sufficiently identified where complaint identified "the exact technology" in question, stated with specificity the types of trade secrets relating to "thin-film GaAs solar technology," and identified the NDA between the parties under which the technology was provided); *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, 2020 U.S. Dist. LEXIS 16368, at *20-21 (N.D. Cal. Jan. 31, 2020) (specific allegations that plaintiff showed defendant "how it staffs its production lines" and the "order of operations" for its assembly lines were sufficient); *InteliClear, LLC v. ETC Global Holdings*, 2019 U.S. Dist. LEXIS 130810 (C.D. Cal. Apr. 5, 2019) (allegations were sufficient where plaintiff described "a single, distinct system and the components therein" and pleaded facts showing that defendant understood the system and agreed to keep it confidential).

13

1    Accordingly, the complaint fails to provide fair notice of a DTSA claim.

2    **B.    Eko Has Not Pleaded Facts Sufficient to Show That Quibi**
3    **Misappropriated Any Trade Secrets**

4    Even if *arguendo* Eko had properly identified the trade secrets at issue, the

5    complaint fails to plead facts to support the plausible inference that Quibi obtained

6    or misappropriated those trade secrets. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7    As noted above, the complaint does not allege that Eko provided any trade

8    secret to Quibi; rather, Eko alleges that it provided information to Smith and Burfitt

9    at Snap years before Quibi was formed. (Compl. ¶¶ 28-30, 32-34.) Allegations of

10   an employee's knowledge, obtained during prior employment, are insufficient to

11   show that Quibi misappropriated a trade secret. *See, e.g.*, *GlobeSpan, Inc. v.*

12   *O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001) (granting motion to dismiss

13   trade secrets claim based on allegations that employee obtained trade secrets in

14   prior employment and brought them to new employer for failure to allege

15   misappropriation by employer). Courts in this Circuit have rejected the "inevitable

16   disclosure" doctrine for information learned by employees during prior

17   employment, which "runs counter to California's public policy favoring employee

18   mobility." *Id.* (*citing, e.g.*, *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp.

19   2d 1111, 1120 (N.D. Cal. 1999)); *accord Whyte v. Schlage Lock Co.*, 101 Cal. App.

20   4th 1443, 1464 (2002) ("the inevitable disclosure doctrine cannot be used as a

21   substitute for proving actual or threatened misappropriation of trade secrets").

22   The complaint does not allege facts to suggest that Quibi knew Smith or

23   Burfitt had obtained a trade secret from Eko or agreed to maintain any trade secrets.

24   *Taoglas Grp. Holdings Ltd. v. 2J Antennas USA, Corp.*, 2019 U.S. Dist. LEXIS

25   44093, at *13 (S.D. Cal. Mar. 18, 2019) (explaining that complaint did not plead

26   facts showing defendant knew or had reason to know employee-engineer was under

27   a duty to maintain a trade secret, but at most, showed employee was prohibited

28   from sharing certain information under a "Confidentiality Agreement," which could

14

1   include non-trade-secret information).  Again, the complaint uses the terms

2   "confidential information" and "trade secrets" interchangeably.

3          Eko's conclusory allegations that Quibi is launching an App with features

4   "strikingly similar" to Eko's product, purportedly developed in less time that Eko's,

5   "[do] not plausibly allege the competitor's product must have been created with

6   trade secrets" but instead describe "a market competitor." *M v. Litrinium, Inc.*,

7   2019 U.S. Dist. LEXIS 212479, at *27-28 (C.D. Cal. Sep. 23, 2019) (allegations

8   that defendant, after hiring plaintiff's former employee, developed competitive

9   products with similar features in far less time than plaintiff, do "not plausibly allege

10  that the competitor's product must have been created with trade secrets").[4]

11         Finally, Eko's allegation that Quibi's founder, Mr. Katzenberg, agreed to a

12  meeting on March 23, 2017, for Eko's CEO to pitch Mr. Katzenberg for an

13  investment in Eko, does not support any inference that Quibi misappropriated a

14  trade secret.  (Compl. ¶ 31.)  The meeting between Mr. Katzenberg and Mr. Bloch

15  is not alleged to have taken place under an NDA or other expectation of

16  confidentiality and, as of the date of the meeting, the '765 patent had already

17  published, and thus its background disclosures and any inventions claimed in it

18  were known to the public and could not be a trade secret.  *AlterG*, 388 F. Supp. 3d

19  at 1146.  Any information that Mr. Bloch freely disclosed to Mr. Katzenberg in a

20  show-and-tell meeting to attract investor interest cannot support a DTSA claim.

21  *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1014

22  (N.D. Cal. 2018) (party "loses the ability" to claim information as trade secret

23  where information shared without protection of confidentiality agreement).

24

25         [4] *See also Human Longevity*, 2018 U.S. Dist. LEXIS 213912, at *15
    (allegations that former employee forwarded emails with confidential information
26  were not sufficient to show that defendant knew misappropriated trade secrets were
    being provided); *MedioStream*, 869 F. Supp. 2d at 1113 (where most of the
27  allegations showed information passed between Sonic and Microsoft, allegations
    were insufficient to show that Apple had misappropriated trade secrets).
28

                                          15

4210741

1     Accordingly, Eko has not properly pleaded a claim under the DTSA.

2     **C.     The Allegations in Eko's Motion for a Preliminary Injunction Do
            Not Cure the Defects in Eko's Complaint or Provide Fair Notice**
3

4          In evaluating the sufficiency of the complaint, the Court need not consider

5     the evidence in support or opposition to Eko's motion for a preliminary injunction.

6     *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir. 1982)

7     (recognizing it is reversible error when a court considers material outside the

8     pleading on a Rule 12(b)(6) motion and yet fails to convert it to summary judgment

9     motion); *see also Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1038-40 (9th

10    Cir. 2004) (concluding that district court erred in granting Rule 12(b)(1) motion

11    based in part on evidence submitted with motion for preliminary injunction, but

12    affirming dismissal on alternative ground).

13         In any event, Eko's preliminary injunction papers are internally inconsistent

14    in their attempt to identify the trade secret at issue.  As Quibi's opposition explains,

15    Eko's expert says one thing about the trade secrets at issue, and Eko's brief says

16    another.  (ECF No. 42 at 15-16.)  Neither provides clarity as to what specifically

17    Eko claims Quibi misappropriated, and how that information could be a trade secret

18    in light of Eko's public disclosures in its patent and other publicly available

19    information.  (*Id.* at 17-18.)  And, Eko's preliminary injunction papers (ECF No. 30

20    *et al.*) make no mention of the source code referenced in the complaint.  Rule 8 and

21    the DTSA require more for Eko to proceed past the pleading stage.

22                                    **CONCLUSION**

23         For all the reasons stated herein, Eko's complaint should be dismissed.

24    Dated:     April 20, 2020              MORRISON & FOERSTER LLP

25                                          By:   */s/ Michael A. Jacobs*

26                                                Michael A. Jacobs

27                                          Attorneys for Defendant
                                            QUIBI HOLDINGS, LLC
28

                                          16

4210741