UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:
Not Present                            Not Present

**Proceedings:** [REDACTED] (IN CHAMBERS) - Plaintiff's Motion for Preliminary Injunction (ECF No. 30; ECF No. 76; ECF No. 77)

### I.   INTRODUCTION

Plaintiff JBF Interlude 2009 Ltd. – Israel ("Eko") is a technology company that describes itself as a platform for interactive multimedia storytelling and licensing partner for others to use its platform for developing content. On January 8, 2020, defendant Quibi Holdings, LLC ("Quibi") debuted publicly its mobile device application and service at the Consumer Electronics Show ("CES") in Las Vegas, which included Quibi's "Turnstyle" feature that enables, *inter alia*, mobile device users to change between portrait and landscape mode while watching a video without wasting unused screen area. On April 6, 2020, Quibi launched its video-streaming service that delivers short-form video content to its subscribers on mobile devices and that includes its Turnstyle feature.

On March 10, 2020, in advance of Quibi's planned April 6, 2020 release date, Eko filed this action against Quibi based on Quibi's Turnstyle feature and advanced two claims for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") and for patent infringement. See ECF No. 1. ("Compl."). This action was filed one day after Quibi filed suit against Eko's United States subsidiary, Interlude US, Inc. d/b/a Eko,[1] for declaratory relief as to non-infringement of Eko's patent and as to no misappropriation of trade secrets under DTSA or the California Uniform Trade Secrets Act ("CUTSA"). See

---

[1] Although elsewhere in this action the parties have identified JBF Interlude 2009 Ltd - Israel as "JBF" and Interlude U.S., Inc. as "Eko," this Order will refer to JBF Interlude 2009 Ltd - Israel as "Eko" as the Motion does. See ECF No. 30 at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

Quibi Holdings, LLC v. Interlude US, Inc., No. 2:20-cv-02250 CAS (SKx) (C.D. Cal. Mar. 9, 2020), ECF No. 1 (the "Related Action").

On April 1, 2020, Eko filed an ex parte application for a preliminary injunction. ECF No. 25. Later that day, the application was stricken for selecting the wrong event for a motion. See ECF No. 27. On April 1, 2020, Eko then filed a regularly noticed Motion for Preliminary Injunction (the "Motion"). ECF No. 30, ECF No. 76 (sealed), ECF No. 77 (redacted). Quibi filed an opposition (the "Opposition"). ECF No. 80 (sealed), ECF No. 81 (redacted). Eko filed a reply (the "Reply"). ECF No. 107 (sealed), ECF No. 108 (redacted). Leave was granted for Quibi to file a sur-reply. See ECF No. 136, ECF No. 152 (sealed), ECF No. 153 (redacted).

Because the Motion scheduled a hearing for a closed motion date, Memorial Day, May 25, 2020, the hearing was continued to June 29, 2020. ECF No. 32. On April 7, 2020, Eko's ex parte application to shorten the time for hearing was granted and the hearing was scheduled for May 4, 2020. ECF No. 37. After a short continuance, a telephonic hearing on the Motion was held on May 7, 2020, before Judge Kronstadt. See ECF No. 75 (continuance); ECF No. 91 (minute order). On May 11, 2020, the First Amended Complaint was filed. See ECF No. 96 ("FAC"). On May 18, 2020, this action and the Related Action were transferred to this Court. See ECF No. 103. On May 27, 2020, the Second Amended Complaint was filed. See ECF No. 129 ("SAC").

On June 17, 2020, an order issued that directed the parties to file a joint report regarding mootness. ECF No. 169. The parties timely filed a joint report (the "Joint Report"). See ECF No. 175 (redacted); ECF No. 174-1 (sealed).

The Motion for Preliminary Injunction is now before the Court. Having considered the parties' arguments, the submission in support thereof, the Joint Report, and the transcript of the May 7, 2020 hearing, the Motion is **DENIED**.

## II. BACKGROUND

### A. Eko's Claimed Trade Secret and Initial Disclosure

#### (1) Mobile Device Optimized RTS and the Eko '765 Patent

Eko calls its claimed trade secret Mobile Device Optimized Real Time Switching ("Mobile Device Optimized RTS"). Motion at 6. Eko's claimed innovation is the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

combination of a method to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Declaration of Tal Zubalsky ("Zubalsky Decl.") ¶ 8, ECF No. 76-11 (sealed), ECF No. 77-11 (redacted). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Id. Because this method ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, which is not ideal for mobile device use, Eko "optimized" this method ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Id. ¶ 10. Plaintiff's technical expert, Sandeep Chatterjee, explains that Eko's method ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Declaration of Sandeep Chatterjee ("Chatterjee Decl.") ¶ 18, ECF No. 76-17 (sealed), ECF No. 77-17 (redacted).

Eko obtained United States Patent No. 10,460,765 (the "Eko '765 Patent"). See Zubalsky Decl., Ex. 1, ECF No. 77-12. The abstract of the Eko '765 Patent describes "[s]ystems and methods for providing adaptive and responsive media":

> In various implementations, a video for playback is received at a user device having a plurality of associated properties. Based on at least one of the properties, a first state of the video is configured, and the video is presented according to the first state. During playback of the video, a change in one of the device properties is detected, and the video is seamlessly transitioned to a second state based on the change.

Eko '765 Patent at 2.

Zubalsky, Eko's current Chief Product Officer, states that Eko's claimed trade secret is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Zubalsky Decl. ¶ 18; see also Declaration of Yoni Bloch ("Bloch Decl.") ¶ 17, ECF No. 76-2 (sealed), ECF No. 77-2 (redacted). Chatterjee states that the Eko '765 Patent discloses that multiple video streams can be "combined together in container structures with associated metadata" and downloaded simultaneously, but it "does not disclose or otherwise teach *how* the video streams can be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

combined using optimized RTS; then-existing methods may be used." Chatterjee Decl. ¶ 20 (emphasis in original). Chatterjee continues to explain that "[o]ne way that Eko performs ███████████████████████ Interlude Media Container ███████." Id. ¶ 22. Chatterjee identifies two "optimizations" of Eko's technology: ███████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
█████ Id. ¶ 26.

### (2) Eko and Snap

From 2014 through early 2018, Eko was in discussions with Snapchat, Inc. ("Snapchat") about forming a partnership for distribution of content on Snapchat's platform. Zubalsky Decl. ¶¶ 12, 21. In December 2015, Eko and Snapchat executed a mutual nondisclosure agreement (the "Snapchat NDA"). Id. ¶ 13; Bloch Decl., Ex. 1, ECF No. 76-3 (sealed). Zubalsky states that Eko shared proprietary and confidential information with Snapchat employees, including its claimed trade secret technology in a manner that would permit Snapchat employees to understand its technical methods. Zubalsky Decl. ¶¶ 15-20. Current Quibi employees who worked at Snapchat with Eko deny that any trade secrets or proprietary information was disclosed to them. Declaration of Clifton (C.J.) Smith ("Smith Decl.") ¶ 8, ECF No. 80-12 (sealed), ECF No. 81-12 (redacted); Declaration of Joseph Burfitt ("Burfitt Decl.") ¶ 7, ECF No. 80-15 (sealed), ECF No. 81-15 (redacted); Declaration of Daniel Szeto ("Szeto Decl.") ¶ 9, ECF No. 80-22 (sealed), ECF No. 81-22 (redacted). The discussions between Eko and Snapchat waned in May 2018 and the relationship effectively ended. Zubalsky Decl. ¶ 21.

### B. Quibi's Alleged Misappropriation

#### (1) Turnstyle Development by Quibi

Several former Snapchat employees later joined Quibi. These included CJ Smith, Eric Buehl, Joseph Burfitt, Thomas Conrad and Daniel Szeto. See Smith Decl. ¶¶ 1, 3; Declaration of Eric Buehl ("Buehl Decl.") ¶¶ 1, 3, ECF No. 80-14 (sealed), ECF No. 81-14 (redacted); Burfitt Decl. ¶¶ 1-2; Declaration of Thomas Conrad ("Conrad Decl.") ¶¶ 1-2, ECF No. 80-18 (sealed), ECF No. 81-18 (redacted); Szeto Decl. ¶¶ 3, 6.

Quibi launched on April 6, 2020. Conrad Decl. ¶ 4. Quibi's application for mobile devices includes its Turnstyle feature, which aims to "allow seamless transition between

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

landscape and portrait" orientations and "to deliver users an optimal viewing experience regardless of how they are holding their devices." Id. ¶ 7.

Robert Post, Quibi's Chief Technology Officer, states that he joined Quibi on September 10, 2018, at a time when Quibi had only one other engineer. Declaration of Robert A. Post, Jr. ("Post Decl.") ¶¶ 1, 3, ECF No. 80-5 (sealed), ECF No. 81-5 (redacted). Post managed the development of Quibi's video service and application, "including the Turnstyle feature." Id. ¶ 3. Post describes the development of Turnstyle feature in two general phases: (i) designing a model for video delivery, i.e., the concept, and (ii) the technical implementation, i.e., how to bring the concept to reality. Id. ¶¶ 5-14. Quibi publicly unveiled the method behind the Turnstyle feature at the January 2020 CES in Las Vegas. See Bloch Decl. ¶ 25.

Post states that he worked to realize Katzenberg's "vision for making video beautiful on users' phones" and that a key part of this vision was "to design a way to take advantage of a user's ability to change the orientation" of her device. Post Decl. ¶ 4. Development of the Turnstyle concept—an ability to enable viewing orientation transitions between portrait and landscape modes on mobile devices without wasting screen space—occurred primarily in October through November of 2018. See Post Decl. ¶¶ 6-9. Through the early part and middle of 2019, Quibi then evaluated different technical implementations for Turnstyle, i.e., how the concept would actually be implemented on mobile devices technically instead of simply a proof of concept demonstration. See id. ¶¶ 11-14. Quibi settled on two implementations, one for use while streaming and one for downloaded videos. Id. ¶¶ 12-13. The streaming implementation ███████████████████████
████████████████████████████████████████████████████████████████████████████
Id. ¶ 12. By contrast, the downloaded player implementation ███████████
████████████████████████████████████████████████ Id. ¶ 13.

Some former Snapchat employees worked on the development or implementation of Turnstyle at Quibi. See Smith Decl. ¶¶ 13-14; Burfitt Decl. ¶ 17 (identifying the "tech team" as including, *inter alia*, Burfitt and Buehl). Relevant Quibi employees deny use of Eko trade secrets or proprietary information. See, e.g., Declaration of Blake Barnes ("Barnes Decl.") ¶ 8, ECF No. 80-20 (sealed), ECF No. 81-20 (redacted); Buehl Decl. ¶¶ 3, 9-10; Burfitt Decl. ¶¶ 22, 27; Post Decl. ¶ 26; Smith Decl. ¶ 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

### (2) Eko and Quibi Interactions

In March 2017, before Quibi began its development of Turnstyle, Yoni Bloch—Eko's Chief Executive Officer—met with Jeffrey Katzenberg. Katzenberg is the founder and chairman of Quibi. Declaration of Jeffrey Katzenberg ("Katzenberg Decl.") ¶ 1, ECF No. 81-4. According to Katzenberg, the "purpose of the meeting was for Eko to pitch WndrCo [LLC] to make an investment in Eko." Id. ¶ 5. WndrCo is a "holding company that invests in, acquires, develops, and operates a variety of consumer technology businesses." Id. ¶ 3. Katzenberg founded WndrCo LLC and serves as its managing partner. Id.

Bloch states that he "presented Eko's technology to Katzenberg, including the feature Quibi now calls 'Turnstyle.'" Bloch Decl. ¶ 18. Bloch later "provided Katzenberg with other materials" via email, which included "a link to Eko experiences," "a sizzle reel that included the demonstration of the Turnstyle feature, a demo showing what Eko was doing in partnerships with MGM and Sony, Eko's authoring and development tools, and a New Yorker piece highlighting Eko's story and offerings." Id. Katzenberg denies that they discussed "the concept of transitioning video from horizontal to vertical based on the orientation of a user device" and that the discussion "was limited to Eko's interactive content." Katzenberg Decl. ¶ 5. Katzenberg states that no non-disclosure agreement or other expectation of confidentiality covered the meeting and denies "request[ing] or expect[ing] to receive any confidential or proprietary information from Eko." Id. Bloch explains that while the "sizzle reel" provided to Katzenberg "demonstrates the capabilities of Eko's technology platform, the technology underlying the sizzle reel is not available from the video or link itself." Reply Declaration of Yoni Bloch ("Bloch Reply Decl.") ¶ 5, ECF No. 107-1 (sealed), ECF No. 108-1 (redacted).

On February 27, 2019, several Eko employees and Quibi employees met for breakfast in Los Angeles to develop relationships for potential partnerships. Bloch Decl. ¶¶ 20-21. At this meeting, Bloch states that Quibi employees informed the Eko employees present that Quibi "intended to develop a mobile platform for a streaming service focused on short form." Id. ¶ 21. Bloch states that Quibi employees told him "at that time that they had not yet developed their own platform." Id. Smith denies saying or suggesting that "Quibi had not yet developed its own platform or app" and states that he "would not have been comfortable discussing Quibi's development of its platform." Smith Decl. ¶ 19.

On March 28, 2019, Smith and Burfitt met with Eko in New York at Eko's office. Smith Decl. ¶ 20. At that meeting, Smith "demonstrated the features of Quibi's app"

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

including an "animation that showed Quibi's Turnstyle feature when a device is rotated from portrait to landscape mode." Id. Bloch "could not tell from the simulation" whether Eko's Mobile Device Optimized RTS was being used by Quibi, but Bloch states that he "immediately informed Smith and Burfitt during that meeting that horizontal to vertical feature was Eko's technology, and they would need a license from Eko to use this technology." Bloch Decl. ¶ 23. Bloch maintains that a discussion thereafter occurred as to "Quibi's potential licensing of Eko's proprietary technology, focusing on a partnership to deliver Eko's content on Quibi's forthcoming platform." Id. ¶ 24. Smith denies that Bloch ever asserted that Quibi's application was using Eko's "proprietary technology" or that continued use would be "infringing or improper." Smith Decl. ¶ 21.

Between March 2019 and the night before the January 2020 CES Presentation, Quibi employees and Eko employees remained in contact, but an ongoing factual dispute exists as to the extent of Quibi's disclosure of the Turnstyle feature and Eko's awareness of its functionality. See Smith Decl. ¶¶ 24-27; Declaration of Ivy Sheibar ("Sheibar Decl.") ¶ 12, ECF No. 76-9 (sealed), ECF No. 77-9 (redacted); Declaration of Jocelyn Michels ¶¶ 3-5, ECF No. 108-7; Supplemental Declaration of Smith ("Smith Suppl. Decl.") ¶¶ 16-20, ECF No. 152-8 (sealed), ECF No. 153-8 (redacted).

### III. LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as follows: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." Bernhardt v. Los Angeles Cty., 339 F.3d 920, 926 (9th Cir. 2003) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

A preliminary injunction, moreover, may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. Winter, 555 U.S. at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." CI Games S.A. v. Destination Films, No. 16-CV-05719 SVW (JCx), 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (citing Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984)).

## IV. DISCUSSION

### A. Mootness

"It is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" Ramirez v. Cty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) (quoting Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) (en banc)). "Consequently," the amended complaint "supersede[s]" the prior complaint and the prior complaint "cease[s] to exist." Id. As a result, motions to dismiss directed at the superseded pleading should typically be deemed moot. See id. Courts have similarly held that an amended complaint may render motions for injunctive relief moot, when those motions relied on the superseded pleading as the operative pleading for which injunctive relief was sought. See, e.g., Denton v. Pastor, No. 3:16-cv-05314 RJB (DWC), 2017 WL 1330944, at *2 (W.D. Wash. Apr. 11, 2017); Maloney v. Ryan, No. CV 13-00314-PHX-RCB (BSB), 2013 WL 3282324, at *2 (D. Ariz. June 28, 2013); La Jolla Cove Investors, Inc. v. GoConnect Ltd., No. 11-cv-1907 JLS (JMAx), 2012 WL 1580995, at *1 (S.D. Cal. May 4, 2012). One solution is refiling the Motion after the amended pleading is filed. See La Jolla Cove Investors, 2012 WL 1580995, at *1. Another solution is to construe the previously filed motion as relying on the operative complaint. See, e.g., Modtruss, Inc. v. Battlefrog, LLC, No. 1:16-cv-1317 ELR, 2016 WL 8857304, at *1 (N.D. Ga. June 24, 2016).

Here, the Motion was based on the DTSA claim in the Complaint against Quibi for trade secret misappropriation. See Motion at 21 (citing Compl. ¶¶ 51-61). The FAC also advanced a claim for trade secret misappropriation under DTSA against Quibi, Smith, and Burfitt that requested, *inter alia*, injunctive relief. FAC ¶¶ 67-80. The SAC presents similar claims under DTSA, including the request for injunctive relief. SAC ¶¶ 65-78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

The parties disagree on whether the filing of the FAC and the SAC renders the Motion moot because of the Motion's reliance on the Complaint as the then-operative pleading. See Joint Report. Eko maintains that no defect exists, because the Complaint, FAC, and SAC all contained a trade secrets misappropriation claim and no substantial difference exists between the pleadings for purposes of the Motion. Id. at 1-5. Quibi contends that the filing of the FAC and SAC renders the Motion moot and would require refiling. Id. at 5-6. Quibi argues that construing the Motion "as directed to the Second Amended Complaint would be improper because Eko reframed its allegations in reaction to Quibi's evidence disclosed in the preliminary injuction briefing." Id. at 6.

The Motion does not rely extensively on the factual allegations in the Complaint and instead only relies on the mere existence of the trade secrets claim. See Motion at 21 (citing Complaint ¶¶ 51-61). The Motion presents its own evidence regarding the articulation of the trade secret and other issues relevant to the likelihood of success on the trade secrets claim. Construing the Motion as relying on the SAC as the operative pleading for the trade secrets claim does not expand the scope of the evidence presented by the Motion or materially affect the likelihood of success on the merits. As a result, concerns raised by Quibi, i.e., that construing the Motion as relying on the SAC would permit Eko to rely on allegations in the SAC that were "reframed after seeing Quibi's technology" (Joint Report at 6-8), are unpersuasive.

Where the claim and prayer for injunctive forming the basis for a motion for preliminary injunction remains in an amended pleading and the motion for injunctive relief does not rely on factual allegations that substantially differ between the superseded and amended complaint, construing a motion for injunctive relief as relying on the amended pleading is appropriate. Because the Motion offers its own articulation of the trade secret (see, e.g., Motion at 10-11), construing the Motion to rely on the SAC as the operative complaint does not supplant or otherwise alter the articulation of the trade secret in the Motion. In addition, requiring the refiling of the Motion and related documents would be a needless waste of party and judicial resources. Therefore, the Motion is not rendered moot because of the filing of the FAC or SAC. It shall instead be construed as relating to the SAC as the operative complaint only as to the existence of the trade secrets claim against Quibi and the prayer for injunctive relief—not as to any materially different factual allegations therein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

### B. Irreparable Harm

Winter explains that "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." Cottrell, 632 F.3d at 1131 (emphasis in original). "Alleged harm that is remote or speculative will not be considered irreparable; rather, the movant must demonstrate that the threatened harm is imminent." Lilith Games (Shanghai) Co. v. UCool Inc., No. 15-CV-01267 SC, 2015 WL 5591612, at *10 (N.D. Cal. Sept. 23, 2015). "Loss of goodwill, as well as damage to reputation, can support a finding of irreparable harm." Id. at *11; see also Pyro Spectaculars N., Inc. v. Souza, 861 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." (quoting Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (1991))). Loss of prospective customers can also support such a finding. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001).

"An injunction in a trade secret case seeks to protect the secrecy of misappropriated information and to eliminate any unfair head start the defendant may have gained." Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991). An injunction serves these interests because it "place[s the defendant] in the position it would have occupied if the breach of confidence had not occurred prior to the public disclosure." Id. (alteration in original) (quoting Winston Research Corp. v. Minnesota Mining and Mfg., 350 F.2d 134, 141 (9th Cir. 1965)).

A party seeking a preliminary injunction must show that it is "likely to suffer irreparable harm in the absence of preliminary relief." Am. Trucking, 559 F.3d at 1052 (quoting Winter, 588 U.S. at 20). Thus, integral to any preliminary injunction is a "sufficient causal connection" between the claimed irreparable harm and the alleged misconduct. See Perfect 10, Inc. v. Google Inc., 653 F.3d 976, 982 (9th Cir. 2011). "[S]howing that 'the requested injunction would forestall' the irreparable harm qualifies as such a connection." Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d 803, 819 (9th Cir. 2018) (quoting Perfect 10, 653 F.3d at 981-82). The claimed irreparable harm must "flow from" the specific actionable misconduct alleged, e.g., the infringing or misappropriated component, and not simply from broader economic competition or the non-infringing components of a broader product or service. See Fox Broad. Co. v. Dish Network L.L.C., 747 F.3d 1060, 1072-73 (9th Cir. 2014). But a movant "need not 'show the action sought to be enjoined is the exclusive cause of the injury.'" Id. at 1073 (quoting M.R. v. Dreyfus, 697 F.3d 706, 728 (9th Cir. 2012)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

The Motion identifies several types of alleged irreparable harm: (1) reputational harm and loss of goodwill, (2) "intangible harm" to consumer perception and employee recruitment, (3) "price erosion" and deterioration of customer relationships, and (4) reduced access to funding and increased costs of capital. See Motion at 25-28.

### (1) Contractual Language

As an initial matter, the Motion identifies in the Snapchat NDA the existence of a provision [REDACTED] See Bloch Decl., Ex 1, ECF No. 76-3 (sealed). The Motion identifies a similar provision in the NDAs signed by Smith and Burfitt when they visited Eko as Quibi employees. See Bloch Decl., Ex. 4, ECF No. 76-6 (sealed); Bloch Decl., Ex. 5, ECF No. 76-7 (sealed). "[T]he terms of a contract alone cannot require a court to grant equitable relief." Barranco v. 3D Sys. Corp., 952 F.3d 1122, 1130 (9th Cir. 2020) ("adopt[ing] the accepted rule of our sister circuits that have addressed the question"). However, some weight is given to "parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract." Id. (quoting Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1263, 1266 (10th Cir. 2004)). Thus, these provisions provide some limited, albeit minimal, support for the claimed irreparable harm.

### (2) Reputational Harm and Loss of Goodwill

The Motion fails to make a sufficient showing of irreparable harm to Eko's reputation and goodwill because of the technical implementation of Turnstyle that allegedly resulted from misappropriation of Eko's claimed trade secret Mobile Device Optimized RTS. Eko identifies its reputation for innovative "interactive storytelling" as reflected in interactive music videos and advertising. See Declaration of Richard J. Eichmann ("Eichmann Decl.") ¶¶ 12-13, 30, ECF No. 76-33 (sealed), ECF No. 77-33 (redacted). Quibi defines its primary focus as "delivering extraordinary content and talent to consumers" and a "secondary focus on the innovative technology that makes such content and talent accessible to the public." Declaration of Greg Gioia ("Gioia Decl.") ¶ 7, ECF No. 80-19 (sealed), ECF No. 81-19 (redacted). Eichmann provides some evidence that, in the roughly 10 years of Eko's existence, Eko was recognized as providing creative and innovating advertising and, later, interactive entertainment. See Eichmann Decl. ¶¶ 11-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

Eko's evidence of alleged confusion among distributors and partners is unpersuasive. Sheibar, Eko's Chief Business Officer, states that she has "seen confusion by distributors and partners saying they saw Quibi's offerings and asking if Eko is powering them. I also get questions and pushback from distributors on whether Eko is offering the same or similar features as Quibi is offering." Sheibar Decl. ¶¶ 13. Sheibar fails to identify what particular distributors or partners have articulated such confusion or to provide evidence of such confusion. Bloch generally states that the similarity between Quibi's technology and Eko's technology "has created confusion in the industry with respect to Eko's reputation." Bloch Decl. ¶ 26. Like the Sheibar Declaration, Bloch fails to identify who is confused and how he reached that conclusion. Eichmann reports the Bloch told him that ████████████████████████████████████████████ Eichmann Decl. ¶ 39 (citing Interview with Bloch, March 26, 2020). Although Eichmann references a March 26, 2020 interview with Bloch, which is before the date on which the Bloch Declaration was executed, April 1, 2020, the Bloch declaration does not reference such a circumstance occurring.

"When deciding whether to issue a preliminary injunction, a court may give inadmissible evidence, including hearsay, 'some weight.'" Barcarse v. Cent. Mortg. Co., No. LA CV 12-05608 JAK (FFMx), 2012 WL 12878674, at *2 (C.D. Cal. Aug. 1, 2012) (quoting Flynt Distrib., 734 F.2d at 1394); see also Am. Hotel & Lodging Ass'n v. City of Los Angeles, 119 F. Supp. 3d 1177, 1184 (C.D. Cal. 2015) (Such evidentiary issues "properly go to weight rather than inadmissibility."). "A court need not consider conclusory affidavits or those 'without sufficient support in facts.'" Barcarse, 2012 WL 12878674, at *2 (quoting Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985)).

Sheibar and Bloch's declarations contain hearsay—in Eichmann's case, double hearsay—that lacks sufficient specificity to accord persuasive weight as to their statements of confusion articulated to them about Eko's and Quibi's technology from partners, distributors, or investors. Moreover, setting aside the evidentiary issues, the evidence offered also fails to present a clear showing of a sufficient causal connection between the Turnstyle feature and alleged confusion.

Eko's articulation of irreparable harm on this issue therefore depends primarily on an evaluation of the positive reception of Quibi's 2020 CES presentation and how such reputational gain for Quibi came necessarily at Eko's expense due to Quibi's Turnstyle technology. See Sheibar Decl. ¶ 13; Eichmann Decl. ¶¶ 31-33. To be sure, the evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

submitted by the parties suggests that the Turnstyle feature and Quibi more generally were well-received at the time of the January 2020 CES presentation and before the launch of Quibi on April 6, 2020. However, this positive reception is insufficient to establish irreparable harm to support a preliminary injunction. Eko focuses on "interactive storytelling," e.g., the user may control the path of the narrative, and Quibi focuses instead on a more traditional delivery of linear video content, albeit augmented by the flexibility to view such content in either portrait or landscape mode.

Thus, it is not necessarily true that any positive reputational gain by Quibi came at the expense of Eko's reputation because of the technical implementation of the Turnstyle function. Quibi invested heavily in marketing and original content—roughly ▮ million in content and ▮ million in marketing through April 12, 2020—and a lesser amount in its mobile-device application: ▮ million. Gioia Decl. ¶¶ 8-9. Conrad, Quibi's Chief Product Officer, describes Quibi as a "premium streaming service that delivers exclusive short-form video content to subscribers on mobile devices." Conrad Decl. ¶ 3. Conrad states that Quibi "features top talent and extraordinary storytelling, combined with innovative technology delivered through Quibi's app." Id. According to Conrad, Quibi "intends to spend approximately ▮ dollars on licensed content in the first year following launch." Id. ¶ 9. In short, Quibi focuses on the quality of content delivered as a premium streaming service for which users will pay a subscription (Id. ¶ 5) and for which Quibi will receive advertising revenue from advertising partners (Gioia Decl. ¶ 11). Gioia explains that "Quibi's primary focus is on" content and its "secondary focus" is on "innovative technology that makes such content and talent accessible to the public. Id. ¶ 7. According to Gioia, Quibi competes with "prime time television" and other premium streaming services in selling advertising instead of "digital brands." Id. ¶ 11.

Although they may share some advertising partners, the difference in focus and scale contributes, in part, to undermine Eko's claim that Quibi's reputation came at Eko's expense. For example, Bloch maintains that the similarity in logos shows imitation and that Bloch "received numerous inquires asking [him] if Eko and Quibi were affiliated" (Bloch Reply Decl. ¶¶ 22-25), but the Declaration of Lawrence Steven Greitzer indicates that Quibi and its outside advertising agency did not consider Eko a competitor. See Reply Declaration of Lawrence Steven Greitzer ("Greitzer Decl.") ¶¶ 4-8, ECF No. 153-4. Greitzer, Quibi's team, and an outside agency reviewed color schemes and logos of other competitors. "Eko was not among the competitors considered by the team." Id. ¶ 5. And Greitzer was "not aware of anyone at Quibi who considered Eko's logo in any way in connection with the development of Quibi's logos." Id. ¶¶ 5, 8. The Declaration of Brian

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

Napper states Napper's opinion that no evidence supports the conclusion that Eko would lose market share to Quibi, because of the "plethora of video streaming services available" and the relative obscurity of Eko as a streaming service providing content. See Declaration of Brian W. Napper ("Napper Decl.") ¶¶ 39-41, ECF No. 127 (sealed), ECF No. 128 (redacted).[2] And, as discussed above, although some commonalities may exist, the focus and selling points of Eko and Quibi differ in material aspects.

In short, Eko fails to make a clear showing of irreparable harm suffered by way of reputation and goodwill. Moreover, even if such a showing had been made, Eko fails to make a clear showing of a causal connection between that harm and Quibi's Turnstyle feature, i.e., that harm flows from the technical implementation of the Turnstyle feature, as opposed to Quibi's service, marketing, and content more broadly.

(3) **Existing Relationships and Price Erosion**

Eko points to two existing relationships for which it claims irreparable harm. Eko fails to establish that these relationships have been irreparably harmed or that, if any harm has occurred, such harm flowed from Quibi's Turnstyle feature. First, Sheibar states that  Sheibar Decl. ¶ 15. Despite Sheibar states that "this interest cooled towards the end of 2019, after we believe Jeffrey Katzenberg and Quibi had already begun privately demonstrating their platform to potential partners." Id. Eichmann adds that Eichmann Decl. ¶ 39 (citing interview with Bloch). Eko fails to establish that this change in relationship is irreparable or that it can be causally traced to the Quibi Turnstyle feature instead of broader business or commercial decisions.

Second, Sheibar states that Eko had been in discussions with Sheibar Decl. ¶ 16. Sheibar states that Id. Eichmann states that "Eko entered a large venture with Walmart with intention to develop more than 100 interactive entertainment series in just three years."

---

[2] ECF Nos. 127, 128 are corrected versions of the Napper Declaration. See Notice of Errata to Declaration of Brian W. Napper, ECF No. 89.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

Eichmann Decl. ¶ 14 (citing Eko's website). Eko fails to establish that anything in the relationship between Eko and Walmart changed, besides the possible addition of Quibi to the project. If this even amounts to harm, much less irreparable harm, Eko again fails to present sufficient evidence of a causal connection between the Turnstyle feature and this alleged harm. For example, the Napper Declaration states that both companies "spend billions of dollars on advertising across a variety of channels" and that both Eko and Quibi could co-exist as advertising partners for both companies. See Napper Decl. ¶ 47.

Eko's identification of alleged price erosion suffers from similar defects as to the lack of specific supporting evidence, causal connection to Quibi's Turnstyle feature, and persuasive articulation of how such erosion cannot be quantified in a damages award. Cf. Motion at 27-28 (citing Eichmann Decl. ¶¶ 38, 41); Napper Decl. ¶¶ 52-55.

### (4) Intangible Consumer Perception and Recruitment

Distinct from the above-mentioned harm, Eko claims an "intangible harm" in consumer perception and employee recruitment and retention. First, Eko argues that, if Quibi was to "continue its allegedly unlawful product launch as scheduled" and then be "forced to exit the market" because of Eko, then Eko's reputation could be damaged by consumers blaming Eko for causing the exit of Quibi. Motion at 26-27 (citing Eichmann Decl. ¶ 35). This contention is speculative and, in part, moot, because Quibi has already launched and Eko withdrew its attempt to stop the April 6, 2020 launch date.

Second, Eko argues that irreparable harm exists in relation to employee recruitment and retention. Motion at 27. For support, the Motion cites to the Eichmann Declaration, wherein Eichmann reports that, in February 2020 after the Quibi CES presentation, "at least one job applicant asked about the relationship between Quibi and Eko due to the similarity of the underlying technologies." Eichmann Decl. ¶ 36 (citing interview with Sheibar). Besides being double hearsay, Sheibar makes no reference to such an occurrence in her declaration and the Eichmann declaration lacks sufficient detail to conclude that this amounts to a causal connection of irreparable harm. Without more detail, the simple fact that a job applicant in the technology field asked Eko about its relationship with Quibi because of apparent similarities does not amount to evidence of confusion or that such similarity harmed Eko. Indeed, no evidence indicates whether that job applicant was in fact confused -- as opposed to simply asking questions about relevant companies in the field -- or decided not to join Eko because of Quibi's competition by way of the Turnstyle feature. Given the lack of support for claimed harm and causal link in this particular occurrence, Eichmann's extrapolation of this confusion to job applicants more generally is

Case 2:20-cv-02299-CAS-SK   Document 193   Filed 07/13/20   Page 16 of 19   Page ID #:9517

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

not persuasive. See Reply Declaration of Richard Eichmann ("Eichmann Reply Decl.") ¶ 10, ECF No. 107-9 (sealed), ECF No. 108-9 (redacted). Taken together, Eko fails to present a clear showing of irreparable harm and, even if irreparable harm occurred, a causal connection between the harm and Turnstyle.

(5) **Access to Funding and Capital**

Eko contends that Eko will suffer reduced access to funding and increased costs of capital. See Motion at 28 (citing Eichmann Decl. ¶¶ 44-48). Eichmann states that it is reasonable to believe that Quibi has been able to raise roughly $1.75 billion "due to their alleged patent infringement and theft of trade secrets" and such funding is "at the expense of Eko's ability to do so." Eichmann Decl. ¶ 45. Eichmann further states that Bloch informed Eichmann that Quibi's CES announcement "impacted conversations with new potential investors (e.g., ▬▬▬▬▬▬▬▬▬▬▬▬▬) and existing investors (e.g., ▬▬▬▬▬▬▬)." Id. ¶ 46 (citing interview with Bloch). Besides likely being double hearsay, i.e., what investors tell Bloch and Bloch told Eichmann, and not provided in Bloch's own declaration, it would be surprising if the entry of a well-funded new entrant in the technology and media field did not "impact[] conversations" and Eichmann fails to explain the nature of this impact on these investors and whether a causal connection to Turnstyle existed in such conversations. See also Napper Decl. ¶ 66. Indeed, the Napper Declaration provides persuasive evidence that Quibi and Eko share some investors, "indicat[ing] that investment in Eko and Quibi does not appear to be a mutually exclusive proposition," and that a significant amount of investment into Quibi occurred before development began on the Turnstyle feature in September 2018. See id. ¶¶ 64, 67. Napper also provides persuasive evidence that loss due to licensing revenue of the relevant technology "would be a quantifiable and non-immediate harm." Id. ¶ 69. Taken as a whole, the current evidence before the Court does not satisfy Eko's burden to demonstrate likely irreparable harm to Eko in relation to capital and funding costs and that such harm has a sufficient causal connection to Turnstyle.

(6) **Delay**

"Usually, delay is but a single factor to consider in evaluating irreparable injury'; indeed, 'courts are loath to withhold relief *solely on that ground*." Cuviello v. City of Vallejo, 944 F.3d 816, 833 (9th Cir. 2019) (emphasis in original) (quoting Arc of Cal. v. Douglas, 757 F.3d 975, 990 (9th Cir. 2014)). Delay in seeking injunctive relief can "undercut" a claim of irreparable harm. Garcia v. Google, Inc., 786 F.3d 733, 746 (9th Cir. 2015) (en banc). Although delay is less probative in the case of "ongoing, worsening

Case 2:20-cv-02299-CAS-SK   Document 193   Filed 07/13/20   Page 17 of 19   Page ID #:9518

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

injuries," this action does not present squarely such a case. Compare Cuviello, 944 F.3d at 833 ("Cuviello did not suffer a discrete, excisable injury. Each instance in which Cuviello restrained his own speech contributed to the constitutional injury he suffered.") with Garcia, 786 F.3d at 746 (Plaintiff waited months to seek injunctive relief against a video posted on the internet.).

Here, the delay before the January 2020 CES presentation is relevant but less probative than delay occurring after the presentation and before the April 6, 2020 launch date. The March 2019 meeting at Eko's offices included a non-operable demonstration of the Turnstyle feature by Quibi to Eko. Bloch Decl. ¶ 23; Smith Decl. ¶¶ 20-21. Although agreement exists that Bloch commented on the similarity of the demonstration to Eko's function, disagreement exists as to whether Bloch asserted that any such function was proprietary Eko technology for which a license would be required. See Bloch Decl. ¶ 23; Smith Decl. ¶¶ 20-21; Burfitt Decl. ¶ 24. Bloch states that he "could not tell from the simulation whether Eko's mobile RTS technology was being used by Quibi, but [he] immediately informed Smith and Burfitt during that meeting that horizontal to vertical feature was Eko's technology, and they would need a license from Eko to use this technology." Bloch Decl. ¶ 23. Evidence does not indicate any significant investigation by Eko into Quibi's product, which would be expected if Eko believed that Quibi had relied on Eko's proprietary technology.

It is unclear whether the proprietary information purportedly identified by Bloch was the Eko '765 Patent or the Mobile Device Optimized RTS claimed trade secret, because Bloch states that he was unable to determine whether the latter was being used. This fact is probative of the conclusion that the user experience of the Turnstyle feature does not itself disclose the technical implementation and that Eko appeared to believe that alternative methods could produce the same result as their Mobile Device Optimized RTS. Thus, the period from March 2019 through the January 2020 CES Presentation is somewhat probative, due to the apparent lack of any investigation into the functionality shown by the Turnstyle demonstration, but it is not dispositive.

The period from the January 2020 CES Presentation through the April 6, 2020 launch of Quibi's service is more probative and affects the evaluation of irreparable harm. On January 28, 2020, Eko's Counsel sent a letter describing an "apparent theft" of trade secrets and requested a prompt response. Declaration of Neel Chatterjee ("Neel Chatterjee Decl.") ¶ 6, ECF No. 77-25; Id., Ex. 5 at 5, ECF No. 77-30. On February 10, 2020, Quibi responded substantively. Neel Chatterjee Decl., Ex. 6 at 2, ECF No. 77-31. Nearly a month later, on March 6, 2020, Eko responded. Neel Chatterjee Decl., Ex. 7 at 2, ECF No. 77-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

32. Eko only filed this action after Quibi filed the Related Action on March 9, 2020. Although Eko filed the Complaint on March 10, 2020 (ECF No. 1), Eko did not request injunctive relief until three weeks later, on April 1, 2020, just days before the anticipated April 6, 2020 release date for Quibi. See ECF No. 25.

Eko's first request for injunctive relief was incorrectly docketed as an ex parte motion for a preliminary injunction instead of an application for a temporary restraining order or as a motion for preliminary injunction with an accompanying ex parte application to advance the hearing date. See ECF No. 27 (citing Local Rule 65-1). When Eko refiled its request it did not file an application for a TRO and instead filed a preliminary injunction motion to be heard in accordance with Local Rules for regularly scheduled motions. ECF Nos. 30, 33. Although Eko explained that the cease-and-desist exchange "took this matter past the time that an application for a [TRO] seemed reasonable" (ECF No. 33 at 6 n.1), the time between April 1 and April 6 was not an unreasonable time period for resolution of a TRO, given that such applications, by their nature, are emergencies in which parties seek immediate relief to halt an irreparable harm.[3] Eko's decisions in advance of the April 6 release date for Quibi remain probative of whether the Eko believed the launch of Quibi's application would cause irreparable harm and also undercuts Eko's arguments that Eko forcing Quibi from the market post-release would damage Eko's reputation. Motion at 26-27 (citing Eichmann Decl. ¶ 35).[4]

In short, Eko's delay in seeking injunctive relief is probative, particularly after the end of cease-and-desist process ended, and undercuts the request for injunctive relief.

### (7) Conclusion

Based on a review of the evidence before the Court, Eko fails to meet its burden to demonstrate the likelihood of irreparable harm that will occur absent the requested injunctive relief. In particular, evidence of harm lacks the requisite specificity and

---

[3] Eko also ascribes some delay to the COVID-19 pandemic, but that fact does not change the determination that Eko could have applied for a TRO, given that it filed a full brief with supporting evidence by April 1, 2020.

[4] The future-tense phrasing of the relevant portion of the Motion and Eichmann Declaration—"[I]f Quibi were able to continue its allegedly unlawful product launch as scheduled" (Motion at 26; Eichmann Decl. ¶ 35)—appears to indicate this argument is most relevant in seeking to enjoin the April 6 launch, which is now less persuasive after Eko failed to follow up on its application to enjoin the April 6 launch.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | CV20-2299-CAS (SKx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC | | |

evidentiary support and also lacks a sufficient causal connection to the alleged misappropriation.

Where a party seeking issuance of a preliminary injunction "fail[s] to show irreparable harm, [a court] need not address its likelihood of success on the merits." Perfect 10, 653 F.3d at 982 n.3; see also Ctr. for Food Safety v. Vilsack, 636 F.3d 1166, 1174 (9th Cir. 2011). In such circumstances, courts find that the motion for preliminary injunction "must be denied." Pom Wonderful LLC v. Pur Beverages LLC, No. CV 13-06917 MMM (CWx), 2015 WL 10433693, at *18 (C.D. Cal. Aug. 6, 2015) (collecting cases); see, e.g., Amylin Pharms., Inc. v. Eli Lilly & Co., 456 F. App'x 676, 679 (9th Cir. 2011); Puma SE v. Forever 21, Inc., No. CV17-2523 PSG (E), 2017 WL 4771003, at *4 (C.D. Cal. June 2, 2017) (collecting cases); Kane v. Chobani, Inc., No. 12-cv-02425 LHK, 2013 WL 3776172, at *10 (N.D. Cal. July 15, 2013).

Therefore, due to the lack of a sufficient showing of irreparable harm, the Motion is **DENIED**.

### C.   Remaining Factors

Because the Motion fails to make a sufficient showing for irreparable harm, the Court need not address the likelihood of success on the merits, the balance of equities or the public interest. See, e.g., Perfect 10, 653 F.3d at 982 n.3; Pom Wonderful, 2015 WL 10433693, at *18.

### V.   CONCLUSION

For the reasons stated in this Order, the Motion (ECF Nos. 30, 76, 77) is **DENIED**.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |